**STEWART CAPITAL CORPORATION, et al., Plaintiffs-Appellees,**

v.

**Cecil D. ANDRUS, Secretary of the Interior of the United States of America, Defendant,**

and

**Collins C. Diboll, Intervening-Defendant-Appellant.**

**No. 80–1642.**

United States Court of Appeals, Tenth Circuit.

Feb. 4, 1983.

Craig R. Carver and Pamela A. Ray, Head, Moye, Carver & Ray, Denver, Colo., for plaintiffs-appellees.

Jack M. Weiss and Thomas F. Duchen, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., and Kenneth G. Vines, Vines, Rideout & Gusea, Cheyenne, Wyo., for intervenor-defendant-appellant.

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a judgment of the District Court for the District of Wyoming which considered a ruling of the Interior Board of Land Appeals (IBLA) and affirmed it in part but also reversed it in part. The latter ruling pertained to a determination by the IBLA that plaintiff Stewart had suffered rejection of offers submitted by him for oil and gas leases based upon his failure to comply with an agency regulation. The IBLA had affirmed the actions of the Wyoming BLM rejecting offers submitted by Stewart. He, in turn, on behalf of the applicants, appealed this IBLA decision to the United States District Court for the District of Wyoming. There the current assignee of the leases, that is the substitute owner one Diboll, was allowed to intervene. Judge Kerr affirmed the IBLA's interpretation of the regulations in H.R. Delasco, Inc., et al., 39 IBLA 194 (1979), but the court determined this interpretation could not be applied retroactively to the leases offered by Stewart now in the hands of Diboll. The judge thereby reinstated Stewart's principals as the first drawees of the lottery.

Appeals were then filed from the decision. However the government subsequently dismissed its appeal. Diboll assumed the burden of the appeal in order to try to protect his interest in the leases, the subject matter here.

As is apparent from the above discussion the Bureau of Land Management is autho-

rized to offer the public oil and gas leases on federal land. This is pursuant to the Mineral Lands Leasing Act of 1920, 30 U.S.C. § 226(c). A lottery type drawing system is employed by BLM for the purpose of handling the many applications for leases. A basic requirement is that each applicant submit a drawing entry card (DEC) "signed and fully executed by the applicant or his duly authorized agent in his behalf." 43 C.F.R. § 3112.2–1(a). In the monthly drawing three DECs are drawn. The lease is awarded to the first qualified applicant whose DEC has been drawn.

As we indicated above the appellee Stewart operates a filing service for people wishing to participate in these drawings. Stewart advises the offerors of leases being offered. It is authorized to submit DECs on their behalf. Stewart types the customer's name on a card and affixes the customer's facsimile signature to it by use of a stamp. The evidence in this case showed that the clients fully approved of Stewart utilizing the facsimile signature in connection with the leasing. The regulation which is the center of interest here is 43 C.F.R. § 3102.6–1(a)(2). This provides as follows:

If the offer is signed by an attorney-in-fact or agent, it shall be accompanied by separate statements over the signature of the attorney-in-fact or agent and the offeror stating whether or not there is any agreement or understanding between them or with any other person, either oral or written, by which the attorney in fact or agent or such other person has received or is to receive any interest in the lease when issued. * * * "

Stewart, of course, is not the real party in interest but it is plain that he is the representative of the real parties in interest on behalf of whom Stewart submitted the applications and on whose behalf this action is brought. The applications that Stewart submitted here did not contain any agency statement similar to the one described in the regulation above quoted. Diboll, who did not use Stewart's service, drew a second priority on these leases and he, of course, maintains that he is now entitled to have the leases awarded to him.

The regulation in question has been in effect in substantially the same form since 1964. Stewart has submitted several thousand applications of the same type at issue here. Four hundred sixteen of these were first drawn in those lotteries. Notwithstanding that the leases were awarded to Stewart's clients, the BLM ruled in *D.E. Pack,* 30 IBLA 166, 84 I.D. 192 (1977) that Stewart's application did not comply with the requirements of 43 C.F.R. § 3102.6–1(a)(2). The basis was that there was a lack of an agency statement. Because of this the BLM ruled that Stewart's principals had not complied with the regulations inasmuch as their DECs were similarly defective. The IBLA conducted a review in *Pack* at the request of the Secretary of the Interior. However the decision was affirmed. 38 IBLA 23 (Nov. 8, 1978) (Pack II). On the basis of the decisions just described in *Pack* the IBLA issued the *Delasco* decision which rejected the lease offers of plaintiffs. The *Pack* decisions of the IBLA were appealed to the United States District Court in Utah.

In the case of *Runnells v. Andrus,* 484 Fed.Supp. 1234 (D.Utah 1980) the court reversed the portion of the *Pack* decision giving an interpretation of the regulation retroactive effect. *Pack* did not, however, involve the specific leases at issue in the case at bar.

There is one other decision which is relevant and authoritative. We refer to *McDonald v. Watt,* 653 F.2d 1035 (5th Cir. 1981). The Fifth Circuit in *McDonald* reversed a lower court decision in *McDonald v. Andrus.* It found that the IBLA interpretation of 43 C.F.R. 3102.6–1(a)(2) could only be applied prospectively. This is the initial circuit court decision having to do with the question.

The questions which are to be considered here are:

1. Should the interpretations of 43 C.F.R. § 3102.6–1(a) be applied retroactively?

2. Diboll raises an additional issue. It is whether this case presents a situation of

retroactivity at all. He did not raise it below and we need not consider it. *Nulf v. International Paper Co.*, 656 F.2d 553, 59 (10th Cir.1981).

### The Trial Court's Ruling

The trial court, the Honorable Ewing Kerr, reviewed the *Delasco* decision. As noted, Diboll, whose offer had been drawn second, intervened in the Wyoming case as a party defendant. The trial court, Judge Kerr, upheld the IBLA decision in part and reversed it in part on the ground that the decision, while correct, is to have prospective application and not retroactive, as was the ruling of the Department. The Secretary of the Interior and the party involved, Dr. Diboll, originally appealed from this order. Now the Secretary has moved to dismiss its appeal. The motion was granted on July 22, 1980 and only Diboll remains as an appellee. Judge Kerr carefully considered the regulation that is here in question. The judge recognized that an administrative agency's interpretation of its own regulation is to be given some deference by a reviewing court. The trial court employed a highly rational balancing test for determining whether an administrative decision such as that in our case ought to be applied retroactively or prospectively. *SEC v. Chenery*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The Supreme Court there said in effect that an administrative decision such as that before us should be carefully balanced to ascertain whether or not it should be applied prospectively only. The standards to be utilized are set forth in *Retail, Wholesale, and Department Store Union v. NLRB*, 466 F.2d 380 (D.C.Cir. 1972). They are as follows:

1. Whether the particular case is one of first impression;

2. Whether a new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of the law;

3. The extent to which a party, against whom the new rule is applied, relied on the former rule;

4. The degree of burden which a retroactive order imposes on a party; and

5. The statutory interest in applying a new rule despite reliance of a party on an old standard.

The trial court applied the tests outlined above and concluded that the facts thus tested did not favor Diboll's claim.

An important factor from the standpoint of the Stewart people is the good faith reliance by that group on the prior BLM practice of accepting DECs filed with stamped facsimile signatures and doing so without requiring that they be accompanied by separate statements of the agent and offeror. Indeed, Stewart had been using this facsimile process in filing its offers for approximately six years and during that time no question of compliance with the regulation had been raised. *Pack II, supra,* at 85 I.D. 418–19. The position of the majority in *Pack II* was that even if the BLM had disregarded or failed to apply the regulation, the BLM is not estopped to reject an offer on the basis of previous lack of enforcement. *Pack II, supra,* at 85 I.D. 416–17. Moreover, the opinion in *Pack II* said that the failure of the BLM to give notice to the requirement for filing separate interest statements provides no basis for granting a lease in contravention of the oil and gas regulations. *Pack II, supra,* at 85 I.D. 416–22.

The Board also considered *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed.2d 1995 (1947). To the extent that it considered retroactivity the Chenery opinion states:

That … [agency] action might have a retroactive effect … [is] not necessarily fatal to its validity. Every case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency. But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law. *Id.* at 203, 67 S.Ct. at 1581.

1. The Board observed that the instant case was one of first impression. It acknowledged that its previous decisions interpreting 43 C.F.R. § 3102.6–1(a)(2) came after the filing of Runnells' offer and also that plaintiff Stewart had not received notice of those decisions. Nonetheless, the Board concluded that the "ill effect" of applying the regulation to Runnells' offer was far less than the "mischief" to the oil and gas simultaneous offer system, especially the "mischief" to other qualified oil and gas offerors such as Diboll who would otherwise be entitled to obtain the leases affected. We note once again that the Supreme Court in *Chenery Corp., supra,* held that the ill effects of retroactive application in agency decisions are to be balanced against the beneficial need for such application. Another decision clarifies that this type of determination is not to be made on any automatic basis is *Retail, Wholesale and Department Store Union v. NLRB, supra.*

*McDonald v. Watt, supra,* accepted totally the *Chenery* balancing test as the appropriate inquiry. *McDonald, supra,* at 1043. *McDonald* did not follow the lead of the *Retail* court, which had held that the propriety of retroactive application of an agency decision was a question of law for the court. It nonetheless found no justification for retroactive application of the *Pack* decisions. The *McDonald* court did rely somewhat on the fact that the leaseholders believed in good faith that they were complying with the letter of the regulation as the BLM had treated it in practice. That practice, of course, simply had been to ignore the regulation. Indeed, until the *Pack* decisions, the regulation had been a dead letter which had not been honored in observance.

At any rate the *McDonald* court concluded that the IBLA had abused its discretion by applying *Pack* retroactively. Similar conclusions have been reached by two district courts. In *Runnells v. Andrus, supra,* the *Retail* case was applied in the course of prohibiting retroactive application of *Pack I* and *Pack II.* Of even more importance, the

five-fold test was employed by Judge Kerr in the district court in finding against retroactive application of the *Pack* decisions. *Stewart Capital Corp. v. Andrus,* No. C79–123K (D. Wyoming 1980).

Virtually all of the courts which have considered this issue have agreed that the *Pack* decisions should not be given retroactive effect. The only exception would be the district court decision in *McDonald, supra.* But the fifth circuit ruled the other way on review. Also important is the fact that the government itself has now conceded there is no purpose to be served by retroactively applying *Pack.* The government even dismissed its appeal in this proceeding. The standards other than number 3 (reliance) [1] that are set forth in the *Retail, Wholesale and Department Store Union v. NLRB, supra,* also give support.

In the *Runnells, supra,* case the district court for the district of Utah noted that at the time the *Runnells* case was filed in August 1976 there were no IBLA decisions on whether agency statements were required based on the stamped signature so that *Pack* was, for all practical purposes, a case of first impression. *See Runnells, supra,* at 1238. The IBLA treated it as a case of first impression also. *See Pack II, supra,* at 84 I.D. 421. So the first standard supports the appellee.

2. As to the second standard, whether the new rule is an abrupt departure from well established practice, it can be said that it is so held by Judge Jenkins in *Runnells, supra,* at 1238.

3. We have heretofore considered this test.

4. Is the degree of burden which a retroactive decision might create significant? The trial court noted the burden for such a change should not fall on plaintiffs such as these who felt that they were in good faith compliance. We agree with this viewpoint.

5. Finally, is there a statutory interest in applying a new rule despite the reliance of a party on the old standard. It is asserted by Diboll that there is a substantial

---

1. We have shown above that number 3 is supportive.

statutory interest in applying the *Pack* decision in the instant case. The trial court refuted this assertion in strong terms and said:

> The final factor to be considered is statutory interest. Retroactive application would certainly cloud title to leases issued under a filing system used by companies such as Stewart. Such a procedure is contrary to statutory intent. Furthermore, the statute and regulations appear to be directed at reducing fraud and collusion. There is no evidence of fraud or collusion in this case and none was alleged. The only allegation was non-compliance with the regulation.

In sum, we conclude that the IBLA abused its discretion by applying the *Pack* decisions retroactively to the offers submitted by Stewart's clients. Cf. *Brick v. Andrus,* 628 F.2d 213 (D.C.Cir.1980); *Winkler v. Andrus,* 594 F.2d 775 (10th Cir.1979).

Our decision is that the judgment of the district court should be and is hereby affirmed.