ALICEVILLE HYDRO
ASSOCIATES, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Independence Electric
Corporation, Intervenor.

No. 85–1218.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 20, 1986.
Decided Aug. 29, 1986.

Kenneth T. Rynne, Washington, D.C., for petitioner.

Joel M. Cockrell, Atty., F.E.R.C., with whom William H. Satterfield, General Counsel and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent.

Joel L. Greene, Washington, D.C., was on the brief, for intervenor.

Before EDWARDS and BUCKLEY, Circuit Judges, and WRIGHT, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

Aliceville Hydro Associates ("AHA") petitions this court for review of two orders of the Federal Energy Regulatory Commission ("FERC" or "Commission") rejecting as untimely AHA's application for a preliminary permit to construct a hydroelectric plant at the Aliceville Lock and Dam in Pickens County, Alabama. As a result of FERC's action, it is probable that a license authorizing hydroelectric development of the Aliceville site will ultimately be granted to intervenor Independence Electric Corporation ("IEC"), which also filed a preliminary permit application for the site.

FERC concluded that AHA's application was untimely because it was filed on the day that the Commission had specified for Commission acceptance of the surrender of a previously issued permit for the Aliceville site. FERC reasoned that, under the Commission's Rules of Practice and Procedure, the previously issued permit remained in effect until the close of Commission business on the date specified for surrender and that AHA's application was therefore premature. In this appeal, we must decide whether the Commission reasonably interpreted its Rules of Practice and Procedure and its Notice accepting surrender of the previously issued permit. We must also decide whether the fact that on other occasions and under similar circumstances FERC staff members have accepted applications for preliminary permits entitles AHA to exemption from the Commission's interpretation of its rules. For the reasons stated below, we affirm the Commission's orders.

## I. STATUTORY AND REGULATORY FRAMEWORK

FERC is authorized by the Federal Power Act to regulate the development of hydroelectric power on federal property and on bodies of water subject to federal jurisdiction. 16 U.S.C. § 797 (1982). The Commission exercises this authority by issuing licenses for the construction, operation, and maintenance of facilities necessary for such development. *Id.* § 797(e).

Because license applications entail substantial expenditures for the preparation of detailed maps, specifications, and cost estimates, *id.* § 802, Congress provided for the issuance of preliminary permits "to encourage applicants to expend the resources necessary to prepare license applications." *City of Bedford v. FERC*, 718 F.2d 1164, 1166 (D.C.Cir.1983). Such permits grant the preliminary permittee priority over most other license applicants for a period of up to three years. 16 U.S.C. §§ 797(f), 798.

When more than one preliminary permit application for a particular site is filed with the Commission, the permit is awarded in

accordance with the priorities and standards established by the relevant statute and regulations. *Id.* § 800(a); 18 C.F.R. § 4.37(b)(1)–(3) (1985).[1] When, as in this case, only private developers have applied, FERC will usually determine that the preliminary proposals submitted by competing applicants are equally well adapted to the public interest and will award the permit to the applicant whose application was first accepted for filing. *Id.* § 4.37(b)(2).

## II. Factual Background

This case involves the preliminary permit for development of the hydroelectric potential of the Aliceville Lock and Dam, located in Pickens County, Alabama. A preliminary permit for the Aliceville site was originally issued to the Alabama Municipal Electric Authority ("AMEA") in 1983. In April 1984, AMEA asked the Commission to terminate its permit. On June 13, 1984, the Commission issued a Notice of Surrender of Preliminary Permit, which stated in pertinent part, "[t]he surrender of the preliminary permit ... is deemed accepted 30 days from the date of this notice."

On Friday, July 13, 1984—the 30th day after the date of the Notice—AHA filed a preliminary permit application for the Aliceville site with the Commission. On Monday, July 16, 1984, the next Commission business day, IEC filed a similar application. Later that same day, AHA filed a second preliminary permit application for the site, identical in all respects to its first. AHA withdrew its second application eight days later, on July 24. In its letter withdrawing the second application, AHA explained that the application had been filed "in response to FERC staff stating our previous filing for this project was not timely." The letter further explained that the application was being withdrawn be-

cause "[o]ur most recent discussions with FERC have proven our initial filing was timely."

In August 1984, the Director of FERC's Office of Hydropower Licensing advised IEC by letter that its application was in competition with AHA's application of July 13. IEC was accordingly directed, pursuant to 18 C.F.R. § 4.36(e)(2), to submit a statement explaining why its proposal was better adapted to the public interest than AHA's proposal. IEC responded in September by filing a Protest, Motion to Intervene, and Motion for Summary Disposition with respect to AHA's application. In this filing, IEC asked the Commission to reject AHA's July 13 application as untimely under Rule 2007(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.2007(a)(2). This rule provides that any period of time prescribed or allowed by statute or Commission rule or order includes the entire last day of the period.[2] IEC reasoned that, under this rule and the language of FERC's Notice of Surrender, AMEA's surrender of its preliminary permit did not become effective until the close of Commission business on July 13. AHA's July 13 application was therefore premature, and IEC's July 16 application should be considered the first filed.

The Commission ultimately accepted IEC's contention and, on November 9, 1984, issued an order granting IEC's motion to reject AHA's application and directing that IEC's July 16 application be treated as the first filed.

AHA thereupon filed a Request for Rehearing and Motion for Stay with the Commission. AHA advanced three arguments in this filing. First, it attacked the reasoning of the Commission's November 9 order.

---

1. Regulations governing the award of preliminary permits and development licenses were revised effective June 10, 1985. 50 Fed.Reg. 11,658 (1985). The revisions did not materially change the regulations insofar as they pertain to this appeal, but those regulations were recodified. All references herein are to the revised regulations.

2. Rule 2007(a)(2) states:

The last day of any time period is included in the time period, unless it is a Saturday, Sunday, part-day holiday that affects the Commission, or legal public holiday as designated in section 6103 of title 5, U.S.Code, in which case the period does not end until the close of the Commission business of the next day which is not a Saturday, Sunday, part-day holiday that affects the Commission, or legal public holiday.

Specifically, it asserted that its July 13 application was timely under the plain language of the Commission's Notice of Surrender, and that Rule 2007(a)(2) should not have been applied because it is irrelevant to the computation of preliminary permit surrender periods. Second, AHA presented evidence that on other occasions FERC staff members had accepted applications for preliminary permits filed on the last day of a surrender period, and it claimed that it was entitled to rely on this established practice even if Rule 2007(a)(2) otherwise governed the computation of preliminary permit surrender periods. Finally, it argued that the Commission's decision to apply Rule 2007(a)(2) to preliminary permit surrender periods was a new agency policy that could not properly be applied retroactively to AHA's July 13 filing.

In an order issued on February 5, 1985, FERC rejected each of these contentions and reiterated its decision to treat IEC's July 16 application as the first filed. This appeal follows, in which AHA has reiterated its three objections to the Commission's action.

## III. DISCUSSION

### A. *The Plain Language of the Notice of Surrender and the Import of Rule 2007(a)(2)*

AHA first contends that the Commission improperly interpreted the language of its Notice of Surrender and misapplied Rule 2007(a)(2) in deciding that AHA's July 13 application was untimely. We are unpersuaded by AHA's arguments and conclude that FERC reasonably construed the Notice and Rule 2007(a)(2).

The essential question presented in this appeal is whether the thirty-day period specified in the Notice of Surrender expired at the beginning or at the end of the thirtieth day. If it expired at the beginning, there was no preliminary permit in effect for the Aliceville site on July 13, 1984, and AHA's application should have been accepted. If the period expired at the end of the thirtieth day, AMEA's permit remained in effect through the close of Commission

business on July 13, and AHA's filing was premature.

■ AHA claims that this question is answered by the "plain language" of FERC's Notice of Surrender, and moreover that Rule 2007(a)(2) does not provide an answer to the question. The language relied upon by AHA is as follows: "[t]he surrender of the preliminary permit ... is deemed accepted 30 days from the date of this notice." It is apparent that this language does not answer the question of whether surrender occurred at the beginning or the end of the thirtieth day. We therefore reject AHA's plain language argument as reflecting little more than wishful thinking.

■ We are equally unpersuaded by AHA's argument that Rule 2007(a)(2) does not answer the question of when surrender occurred on the thirtieth day. We note at the outset that the rule is a Commission regulation, and it is well settled that an agency's interpretation of its own regulations is entitled to special deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *United Municipal Distributors Group v. FERC*, 732 F.2d 202, 208 (D.C.Cir.1984). Accordingly, we are at minimum required to uphold the Commission's application of Rule 2007(a)(2) to AHA's filing if it is based on a permissible interpretation of the rule. *Cf. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

■ AHA claims that the rule is inapplicable to preliminary permit applications for two reasons. First, it urges us to recognize a distinction between situations in which a party is given a *period* within which to do something and those in which a *specific date* is set for the occurrence of an event. AHA asserts that Rule 2007(a)(2) governs only the former. AHA submits that as the Commission designated a specific date for the surrender of AMEA's permit, the rule is irrelevant to a computation of the thirty-day surrender period.

We find AHA's proposed distinction hypertechnical and decline to adopt it. AHA cites no authority in support of its construction, and we are unable to conclude that the Commission's failure to recognize such a distinction represents an impermissible interpretation of the Commission's regulations.

AHA's second reason is even less compelling. AHA claims that Rule 2007(a)(2) applies only to the chapter of the Commission's regulations that contains the rule and that the Commission's hydroelectric power licensing regulations are set forth in a separate chapter. Only the first half of this contention is correct. It is true that the scope of FERC's Rules of Practice and Procedure is limited to, *inter alia*, "[a]ny filing or proceeding under *this chapter* ...." 18 C.F.R. § 385.101 (emphasis added). Contrary to AHA's assertion, the Commission's hydroelectric power licensing regulations, 18 C.F.R. pt. 4, and its Rules of Practice and Procedure, 18 C.F.R. pt. 385, are both contained in chapter 1, tit. 18 C.F.R., albeit in different subchapters.

### B. *The Significance of Prior Commission Practice*

AHA's second contention is that even if the Commission did not misinterpret the Notice of Surrender and Rule 2007(a)(2), the rule "should not have been applied in the face of the Commission's prior consistent practice of accepting new applications on the thirtieth day following the issuance of a notice of surrender." AHA Brief at 10. In support of its position, AHA proffers evidence that, on at least twenty other occasions between July 1983 and November 1984, the Commission's staff permitted applicants to file for preliminary permits on the last day of a surrender period, that the Commission has accepted ten of these applications, and that the other ten are currently pending before the Commission.

Relying on *Associated Gas Distributors v. FERC*, 738 F.2d 1388 (D.C.Cir.1984), AHA claims that this practice was binding on the Commission. In *Associated Gas*, this court recognized that agency practices

consistently followed for long periods of time may be entitled to judicial deference. *Associated Gas* does not stand for the proposition that agency practice can override an agency's interpretation of its regulations, but the decision is consistent with the principle that "[p]ractices of an agency that become crystallized may be in the nature of law, whether or not they are developed pursuant to a delegation of power." 2 K. Davis, *Administrative Law Treatise* § 7:23 at 113 (2d ed. 1983).

This court was required in *Associated Gas* to decide which of several petitions for review of a Commission order was first filed in federal court after the order was officially posted by the Commission. The answer to this question turned on the time of posting, and this court adopted a conclusive presumption that Commission orders are posted at 10:00 a.m. or 3:00 p.m., so long as the actual posting is within a few minutes of these times. In so ruling, this court chose to disregard the actual time of posting in favor of the Commission's longstanding practice of posting orders at these times. AHA contends that the Commission's practice with respect to the filing of preliminary permit applications was as well established as its practice with respect to the posting of orders, and that under *Associated Gas* the practice in this case should be recognized as binding on the Commission. We disagree.

It must be emphasized that the practice at issue in *Associated Gas* was "longstanding." *Associated Gas*, 738 F.2d at 1391. Indeed, the practice was so well established that the court referred to 10:00 a.m. and 3:00 p.m. as the Commission's "scheduled" posting times. *Id.* at 1392. Though the practice may have been initiated and carried out by members of the Commission's staff, it had been repeated twice a day for so long that it bore the Commission's imprimatur. Members of the public were thus entitled to look upon the practice as an expression of Commission policy just as they might look to the Commission's regulations.

■ By contrast, the practice alleged by AHA in the instant case was not an established practice bearing the Commission's imprimatur, but rather an informal practice among relatively low-level staff members. The practice was not repeated enough times, or over a long enough period, or at a high enough level for it to become binding on the Commission. Nor can the Commission's imprimatur be inferred from its acceptance of ten of the twenty applications that FERC staff members permitted to be filed on the final day of a surrender period. All ten of them were uncontested, and AHA has presented no evidence suggesting that the Commission was aware that the timeliness of these applications was open to question. Under these circumstances, we are unable to infer official approbation from the Commission's silence.

### C. Retroactive Application of the Commission's Interpretation of Rule 2007(a)(2)

AHA's third contention on appeal is that even if the Commission's prior practice did not entitle AHA to exemption from Rule 2007(a)(2), the Commission's orders nevertheless represent an improper retroactive application of a new interpretation of the rule. We conclude that the agency acted properly under the standards governing retroactive application of agency decisions.

Our conclusion is consistent with Professor Davis' observation that:

A basic distinction must be recognized between (1) new applications of law, clarifications, and additions, and (2) substitution of new law for old law that was reasonably clear. The first is natural, normal, and necessary. The second raises problems of fairness to those who have relied on the old law.

4 K. Davis, *supra*, § 20:7 at 23. This distinction has its roots in *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1581, 91 L.Ed. 1995 (1947), where the Supreme Court acknowledged that "[e]very case of first impression has retroactive effect," but the Court approved retroactive application of agency decisions in such

cases so long as "the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles ... is greater than the ill effect of retroactive application of a new standard...."

The test enunciated in *Chenery Corp.* was refined in *Retail, Wholesale and Department Store Union v. NLRB*, 466 F.2d 380, 390 (D.C.Cir.1972), where this court identified five factors to be considered in deciding whether an administrative decision may be given retroactive effect:

(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

■ Application of the *Retail, Wholesale* test to the instant case compels the conclusion that the Commission properly gave retroactive effect to its interpretation of Rule 2007(a)(2). It is indisputable that this was a case of first impression, as the Commission had never before decided whether the rule governs the computation of preliminary permit surrender periods. As explained in the preceding section, there was no well-established practice in this case, but rather an unsettled question of law which the Commission was called upon to decide.

AHA claims that it relied on the prior practice of the Commission's staff, but AHA's filing on July 16 of an application identical to its July 13 application leads us to question the degree to which AHA actually relied on this practice. At the very least, the July 16 filing indicates that AHA knew there was some uncertainty regarding computation of the thirty-day surrender period, and it wished to protect its position by filing on both of the possible dates on which new applications could first be accepted. AHA admitted knowledge of this

uncertainty in its July 24 letter withdrawing the July 16 application, where it explained that the application was filed "in response to FERC staff stating our previous filing for this project was not timely."

Even if we assume that AHA actually relied on the practice, the July 16 filing leaves doubt as to the degree to which AHA's reliance was detrimental. It is apparent that AHA would not be before this court had it filed earlier than IEC on July 16. AHA has not claimed that it learned of the possibility that its July 13 filing was untimely only after IEC filed its application on July 16. Thus, to the extent that AHA's complaint is that IEC won the race to FERC's filing room on July 16, we have no basis for attributing this to AHA's alleged reliance on past Commission practice.

It is also significant that whatever reliance AHA has been able to demonstrate is matched by IEC's reliance on Rule 2007(a)(2). There is evidence in the record, undisputed by AHA, that IEC consulted with the Commission's Office of General Counsel prior to filing its preliminary permit application, and IEC was advised that, pursuant to Rule 2007(a)(2), applications for the Aliceville site could not be accepted until July 16. IEC acted in accordance with this advice by filing on July 16. Thus, while retroactive application of the decision in this case imposes a substantial burden on AHA, failure to give such effect to the decision would impose an equal burden on IEC, which relied on Rule 2007(a)(2). For all these reasons, we cannot conclude that AHA's reliance interest outweighs the interest in giving Rule 2007(a)(2) its proper effect in this case. The Commission's interpretation of the rule clearly falls within Professor Davis' category of "new applications of law, clarifications, and additions" and as such was properly applied to the immediate parties.

AHA's reliance on *Stewart Capital Corp. v. Andrus*, 701 F.2d 846 (10th Cir. 1983), and *McDonald v. Watt*, 653 F.2d 1035 (5th Cir.1981), is misplaced because those cases differed from the instant case in two critical respects. First, unlike the instant case, the agency decision at issue in those cases represented an abrupt departure from well-established agency practice, and as a result the decision frustrated the reasonable expectations of the complaining parties. Second, those cases did not involve conflicting reliance interests. In contrast to the instant case, where AHA's claim of reliance on prior agency practice is matched by IEC's claim of reliance on Rule 2007(a)(2), the proponents of the agency decision in those cases had not relied to their detriment on the interpretation ultimately adopted by the agency. We accordingly hold that the Commission did not err in this case by giving retroactive effect to its interpretation of Rule 2007(a)(2).

#### IV. CONCLUSION

For the foregoing reasons, the orders of the Commission are

*Affirmed.*