Opinion by Judge CHRISTEN; Dissent by Judge SEABRIGHT. ' '
OPINION
CHRISTEN, Circuit Judge:
Augustin Valenzuela Gallardo, a citizen of Mexico, pleaded guilty to -violating California Penal Code § 32, accessory to a felony. An immigration' judge (IJ) ordered him removed to Mexico, concluding that his conviction constituted an “offense relating to obstruction of justice” and therefore an aggravated felony under the Immigration and-Nationality Act (INA) § 101(a)(43)(S). The Board of Immigration Appeals (BIA) dismissed Valenzuela Gallardo’s appeal. In its decision, it announced a new interpretation of “obstruction of justice” that requires only “the affirmative and intentional attempt,. with specific intent, to interfere with the process of justice.” Contrary to the prior construction, this interpretation of INA § 101(a)(43)(S) requires no nexus to an ongoing investigation or proceeding. Valenzuela Gallardo petitions for review, arguing that the agency’s revised interpretation of the statute raises serious constitutional concerns about whether the statute is unconstitutionally vague. We agree and remand to ,the Board for application of the previous interpretation or. formulation of a construction that does not raise grave constitutional doubts.
BACKGROUND
I. Facts
Augustin Valenzuela Gallardo was admitted to the United States as a lawful permanent resident in 2002. In November 2007, police discovered him in a stolen vehicle with possession of methamphetamine,' ecstacy, and a loaded firearm. Valenzuela Gallardo was arrested and charged with two counts of possession of a controlled substance (methamphetamine) in violation of California Health and Safety Code § 11378, one count ‘ of possessing methamphetamine while armed in violation of California Health and Safety Code § 11370.1, and one count of failing to comply with the terms of his probation in violation of California Penal Code § 1203. He agreed to plead guilty to an amended count of accessory to a felony in violation of California Penal Code § 32. All remaining charges were dismissed. Initially, Valenzuela Gallardo was placed on probation, but he subsequently violated the terms of his probation and was sentenced to sixteen months’ imprisonment.
II. Proceedings
In June 2010, the Government placed Valenzuela Gallardo in removal proceedings. The Government argued that a conviction under California Penal Code § 32 *812 constitutes an “offense relating to obstruction of justice,” and therefore an aggravated felony under INA § 101(a)(43)(S).
Valenzuela Gallardo filed a motion to terminate removal proceedings in July 2010. He appeared before an immigration judge and contested removability on the grounds that his conviction was not an offense “relating to obstruction of justice” because “the federal ‘Obstruction of Justice’ grounds must relate to an extant judicial proceeding.”
The IJ denied Valenzuela Gallardo’s mo-tioii to terminate removal proceedings. The IJ reasoned that the BIA had previously held that the federal crime of accessory after the fact, 18 U.S.C. § 3, is an aggravated felony, that there was “no material difference” between § 3 and California Penal Code § 32, and that the BIA has not “limit[ed] the scope of the obstruction of justice, aggravated felony to cases in which there is a pending judicial proceeding.” The IJ thus concluded that a conviction under California Penal Code § 32 is an “offense relating to obstruction of justice,” and ordered Valenzuela Gallardo removed to Mexico.
Valenzuela Gallardo filed an appeal but the BIA dismissed.it. After the BIA denied. Valenzuela Gallardo’s motion to reconsider, he petitioned for review and requested a stay of removal. Our .court dismissed that petition fpr lack of jurisdiction.
In May 2011, we issued an opinion in. Trung Thanh Hoang v. Holder, a case that looked to two prior BIA decisions and held, under the agency’s interpretation, that a crime constitutes an obstruction of justice crime “when it interferes with an ongoing proceeding or investigation.” 641 F.3d 1157, 1164 (9th Cir.2011) (some emphasis added).
' In light, of our opinion in Hoang, the BIA sua sponte reopened Valenzuela Gal-lardo’s proceedings for further consideration of his removability. In the - opinion that followed, In re Valenzuela Gallardo, a three-judge panel of the BIA sought “to clarify [the BIA’s] prior precedents on the scope of the phrase ‘relating to obstruction of justice,’ ” and rejected Hoang’s holding. 25 I. & N. Dec. 838, 840, 842 (B.I.A.2012). The three-judge panel announced that “obstruction of justice” requires only:
the affirmative and intentional attempt, with specific intent, to interfere with the process of justice — [this] demarcates the category of crimes constituting obstruction of justice. While many crimes fitting this definition will involve interference with an ongoing criminal investigation or trial, we now clarify that the existence of such proceedings is not an essential element of “an offense relating to obstruction of justice.”
Id. at 841 (emphasis added) (citation omitted). In light of this interpretation, the BIA concluded that Valenzuela Gallardo’s conviction was an offense “relating to obstruction of justice.” Id. at 844. Because Valenzuela. Gallardo was ultimately sentenced to more than, one year of imprisonment for his offense, the BIA concluded that his conviction was for an aggravated felony. Id. It therefore dismissed Valenzuela Gallardo’s reopened appeal. Id,
Valenzuela Gallardo petitions for review, challenging the BIA’s most recent interpretation of INA § 101(a)(43)(S). We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D), and we hold that the BIA’s new construction of “obstruction of justice” raises grave doubts about whether the statute, so construed," is unconstitutionally vague. Because we see no clear indication that Congress intended to delegate authority to the agency to push the constitutional boundary, wé remand to the agency, as the agency requested, for consideration of a new construction or application of the interpretation it previously an *813 nounced in In re Espinoza-Gonzalez, 22 I. & N. Dec. 889 (B.I.A.1999) (en banc), and to which we deferred in Hoang, 641 F.3d at 1161.
STANDARD OF REVIEW
We review legal questions de novo: Perez-Enriquez v. Gonzales, 463 F.3d 1007, 1009 (9th Cir.2006). Where, as here, the BIA reviews an IJ’s decision de novo, our review is limited to the BIA’s decision. Shah v. INS, 220 F.3d 1062, 1067 (9th Cir.2000).
DISCUSSION
I. The BIA’s most recent interpretation departs from its prior interpretations.
“Any alien who is convicted of an aggravated felony at any time after admission is deportable.” 8 U.S.C. § 1227(a)(2)(A)(iii). The INA does not separately define “aggravated felony.” Instead, it refers to a list of qualifying criminal offenses, which includes offenses “relating to obstruction of justice, perjury or subornation of perjury, or. bribery of a witness, for which the term of imprisonment is at least one year.” INA § 101(a)(43)(S).
In 1997, a twelve-member en banc panel of the BIA ruled in In re Batista-Hernandez that the federal crime of accessory after the fact, 18 U.S.C. § 3, “clearly relates to.obstruction of justice” and constitutes an aggravated felony under INA § 101(a)(43)(S). 21 I. & N. Dec. 955, 961 (B.I.A.1997). The Board explained:
[T]he wording of 18 U.S.C. § 3 itself indicates its relation to obstruction of justice, for the statute criminalizes actions knowingly taken to “hinder or prevent (another’s) apprehension, trial or punishment.” ... [T]he nature of being an accessory after the fact lies essentially in obstructing justice and preventing the arrest of the offender.

Id.

Two years later, a sixteen-member en banc panel of the BIA issued Espinoza-Gonzalez and concluded that misprision of felony, 18 U.S.C. §'4, does not constitute obstruction of justice and is not an aggravated felony under INA § 101(a)(43)(S). 22 I. & N. Dec. 889, 897 (B.I.A.1999). The BIA reasoned:
We do not believe that every offense that, by its nature, woúld tend to “obstruct justice” is an offensé that should properly be classified as “obstruction of justice.” The United States Code delineates a circumscribed set of • offenses that constitute' “obstruction of justice,” and although misprision of felony bears some resemblance to these offenses, it lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice.-... [W]here the obstruction of justice offens.es .are broadly stated, courts, have, interpreted them narrowly. . To include all- offenses that have a tendency to, or by their nature do, obstruct justice would east the net too widely.
Id. at 893-94 (citation-omitted). Espinoza-Gonzalez distinguished misprision of felony from accessory after the fact, which had been at issue in Batista^Hemandez:
The definition of the federal crime of[1] accessory after the fact In 18 U.S.C. § 3 required an affirmative ‘action knowingly undertaken “in order to hinder or prevent (another’s) apprehension, trial or punishment.” . Although misprision of a felony has as an element the affirmative concealment.of the felony, there is, unlike § 3, nothing in § 4 that references the specific purpose for which the concealment must be undertaken. The specific purpose of hindering the process of justice brings the federal “accessory af *814 ter the fact” crime within the general ambit of offenses that fall under the “obstruction of justice” designation.
Furthermore, concealment of a crime is qualitatively different from an affirmative action to hinder or prevent another’s apprehension, trial, or punishment. It is a lesser offense to conceal a crime where there is no investigation or proceeding, or even an intent to hinder the process of justice, and where the defendant need not be involved in the commission of the crime. Further, accessory after the fact has been defined as obstructing justice. United States v. Barlow, [470 F.2d 1245,] 1252-58 [ (D.C.Cir.1972) ].
Id. at 894-95 (emphasis added).
Although the phrase “obstruction of justice” is not statutorily defined, the BIA observed that Title 18, Chapter 73 of the United States Code lists a number of offenses under the heading “Obstruction of Justice” and provides “substantial guidance, consistent with judicial pronouncements on the subject, as to the contours of the ‘obstruction of justice’ category of offenses.” Id. at 893, 894 n. 4; see also 18 U.S.C. §§ 1501-1521. The Board noted:
The intent of the two broadest provisions, § 1503 (prohibiting persons from influencing or injuring an officer or juror generally) and § 1510 (prohibiting obstruction of criminal investigations), is to protect individuals assisting in a federal investigation or judicial proceeding and to prevent a miscarriage of justice in any case pending in a federal court.
Id. at 892 (emphasis added) (citation omitted). The BIA also found guidance in the Supreme Court’s decision in United States v. Aguilar, which narrowly construed § 1503’s “catchall phrase”[1] to require action taken with an intent to influence judicial or grand jury proceedings. 515 U.S. 593, 598-99, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (holding that “[t]he action taken by the accused must be with an intent to influence judicial or grand jury proceedings”).
Our court has deferred to the agency interpretation announced in Espinoza-Gonzalez on three occasions. See Trung Thanh Hoang v. Holder, 641 F.3d 1157, 1161 (9th Cir.2011); Salazar-Luviano v. Mukasey, 551 F.3d 857, 860 (9th Cir.2008); Renteria-Morales v. Mukasey, 551 F.3d 1076, 1086-87 (9th Cir.2008). In the proceedings below, a three-judge panel of the BIA revisited its en banc court’s interpretation of obstruction of justice and clarified that a nexus to an “ongoing criminal investigation or trial ... is not an essential element of ‘an offense related to obstruction of justice.’ ” In re Valenzuela Gallardo, 25 I. & N. Dec. 838, 841 (B.I.A.2012). Applying this broader definition, the BIA dismissed Valenzuela Gallardo’s appeal.[2] Id. at 844.
*815 II. The constitutional avoidance doctrine applies in the Chevron context.
We apply the Chevron framework where, as here, there is “binding agency precedent on-point” in the form of a published BIA opinion. See Renteria-Morales, 551 F.3d at 1081 (quoting Kharana v. Gonzales, 487 F.3d 1280, 1283 n. 4 (9th Cir.2007)). Under the familiar Chevron framework, we first ask “whether Con gress has directly spoken to the precise question at issue.” Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the statute “unambiguously bars” the agency’s interpretation, that is the end of the analysis, see Whitman v. Am. Trucking Ass’ns, Inc., 531 U.S. 457, 471, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001), “for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress,” Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. To determine whether the statute unambiguously bars an agency interpretation we “apply[ ] the normal ‘tools of statutory construction.’” INS v. St. Cyr, 533 U.S. 289, 320 n. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (quoting Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. 2778). If, after application of these tools, an immigration statute remains “silent or ambiguous with respect to the specific issue before the agency,” we proceed to Chevron Step Two and determine whether “the BIA’s interpretation is ‘based on a permissible construction of the statute.’” Renteria-Morales, 551 F.3d at 1081 (quoting Parrilla v. Gonzales, 414 F.3d 1038, 1041 (9th Cir.2005)). If it is, the court must defer to the BIA’s reasonable statutory interpretation. .
We have deférred to the BIA’s interpretation of “obstruction of justice” in at least three cases because the INA did not unambiguously bar the interpretation and the interpretation was reasonable.[3] Hoang, 641 F.3d at 1160-61; Salazar-Luviano, 551 F.3d at 860; Renteria-Morales, 551 F.3d at 1086-87; see also INS v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (“It is clear that principles of Chevron deference are applicable to [the INA’s] statutory scheme.”). However, our prior deference to the BIA’s interpretation of “obstruction of justice” does not end the Chevron Step One inquiry. See INS v. Cardoza-Fonseca, 480 U.S. 421, 446-48, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (concluding that the BIA’s interpretation of “well-founded fear,” an otherwise ambiguous term, was inconsistent with the INA at Chevron Step One). Rather, before turning to Chevron ’s Step Two, ye must ask whether Congress intended to permit the agency *816 interpretation. Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 159, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). To answer this question we are aided by traditional tools of statutory construction. See id. at 132-33, 120 S.Ct. 1291; MCI Telecomms. Corp. v. Am. Tel. & Tel Co., 512 U.S. 218, 225-26, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994). If a court, employing these tools, “ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.” Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. 2778.
Particularly relevant here are the doctrines of constitutional avoidance and constitutional narrowing. DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). The dissent objects to our use of constitutional narrowing to interpret the INA, arguing that we should stick with “the familiar Chevron standard.” Dissent at 825. But Chevron itself instructs that “employing traditional tools of statutory construction” is a straightforward application of Chevron. Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. 2778. Indeed, the canon of constitutional avoidance “is highly relevant at Chevron step one.” Morales-Izquierdo v. Gonzales, 486 F.3d 484, 504 (9th Cir.2007) (en banc) (Thomas, J., dissenting); id. at 492-93 (majority opinion) (holding that constitutional narrowing is inapplicable at Chevron Step Two).[4]- Because we “as-sum[e] that Congress does not casually authorize administrative agencies to interpret a statute' to push the limit of congressional authority,” if an agency’s statutory interpretation “invokes the outer limits of Congress’ power, we expect a clear indication that Congress intended that result.” Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng’rs (SWANCC), 531 U.S. 159, 172-73, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). Absent clear indication, we invoke constitutional narrowing at Step One to avoid the constitutional question and foreclose the constitutionally questionable interpretation. Williams v. Babbitt, 115 F.3d 657, 662-63 (9th Cir.1997); see also DeBartolo, 485 U.S. at 588, 108 S.Ct. 1392 (construing the NLRA to preclude ah interpretation raising grave constitutional concerns rather than deferring to the agency interpretation).
*817 The use of constitutional narrowing in the Chevron context is not a novel concept. The Supreme Court and our court have refused to accord deferénce to agency interpretations that raise grave constitutional doubts where other permissible and less troubling interpretations exist. In DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council, 485 U.S. 568, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988), the Supreme Court announced the applicability of the constitutional, avoidance doctrine in the Chevron context. DeBartolo concerned the National Labor Relations Board’s (NLRB) interpretation of “coercion” as used in the National Labor Relations Act (NLRA). The NLRB decided that a labor union’s peaceful handbilling of consumers was prohibited if it encouraged consumers to boycott stores that failed to pay fair wages. Id. at 573, 108 S.Ct. 1392. The Court held that though the interpretation would otherwise be entitled to Chevron deference, the NLRB’s interpretation posed serious questions of validity under the First Amendment. Id. at 574-76, 108 S.Ct. 1392. The Court invoked the constitutional avoidance doctrine: “where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.” Id. at 575, 108 S.Ct. 1392 (citing NLRB v. Catholic Bishop of Chi., 440 U.S. 490, 499-501, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979)). The DeBartolo Court observed:
“[T]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.” This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or' usurp power- 'constitutionally forbidden it.
Id. (quoting Hooper v. California, 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895)).
The Court ultimately determined that a less constitutionally suspect interpretation was not foreclosed by the statutory language or legislative history. It therefore declined to defer to the NLRB’s interpretation because a less problematic construction “makes unnecessary passing on the serious constitutional questions that would be raised by the Board’s understanding of the statute.” Id. at 588,
In Rust v. Sullivan, 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), the Supreme Court further refined its application of the constitutional avoidance doctrine to agency interpretation of ambiguous statutes. The Rust Court reviewed facial challenges to regulations promulgated by the Secretary of Health and Human Services under Title X of the Public Health Service Act. id. at 181, 111 S.Ct. 1759. Because the regulations provided that funds under the Act could not be used to pay for abortions, directly or indirectly, the challengers claimed the regulation violated the First and Fifth Amendments. Id. The Court observed that the principle espoused in DeBartolo “is based at least in part on the- fact that a decision to declare an Act of Congress unconstitutional ‘is the .gravest and most delicate duty that this Court is called on to perform,’ ” id. at 190-91, 111 S.Ct. 1759. (quoting Blodgett v. Holden, 275 U.S. 142, 148, 48 S.Ct. 105, 72 L.Ed. 206 (1927)), and concluded that a “statute must be construed, -if fairly possible, so as to avoid not-only the conclusion that it is unconstitutional but also grave doubts upon that score.” Id. (quoting United States v. Jin Fuey Moy, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 *818 (1916)). Applying this rule, the Court held that the public health regulations at issue in Rust did not “raise the sort of ‘grave and doubtful constitutional questions’ that would lead [it] to assume Congress did not intend to authorize their issuance,” and declined to invalidate the regulations. Id. (citation omitted).
Our court considered DeBartolo and Rust in Williams v. Babbitt, 115 F.3d 657 (9th Cir.1997). There, we synthesized and applied the DeBartolo-Rust constitutional avoidance standard for the first time. Id. at 661-63. The Babbitt court reviewed an interpretation by the Interior Board of Indian Appeals (IBIA) of the Reindeer Industry Act as it pertained to reindeer sales in Alaska. Id. at 659. The IBIA interpreted the Act to prohibit non-Natives from joining the Alaska reindeer industry. Id. On appeal, non-Native appellants claimed that the IBIA interpretation violated the constitutional guarantee of equal protection. Id. at 660.
Our analysis in Babbitt began by observing that the IBIA interpretation was entitled to Chevron deference “absent other considerations.” Id. at 660 n. 3. We then went on to analyze one of those “other considerations,” namely, whether the interpretation raised equal protection concerns. Id. at 661. We concluded: “Rust and DeBartolo, read together, require courts to scrutinize constitutional objections to a particular agency interpretation skeptically. Only if the agency’s proffered interpretation raises serious constitutional concerns may a court refuse to defer under Chevron.” Id. at 662. Because we concluded that the IBIA’s interpretation of the Reindeer Act raised serious- constitutional concerns, and because “a less constitutionally troubling construction [was] readily available,” we interpreted the Act as not precluding non-Natives from owning and importing reindeer in Alaska. Id. at 666.
When a court practices what Babbitt termed “constitutional narrowing,” it leaves agencies “free to adopt any interpretation that doesn’t come perilously close to the constitutional boundary.” Id. at 662-63. Constitutional narrowing recognizes that the decision to foreclose a constitutionally troubling interpretation is a legal decision, not a policy decision, and should be addressed by the courts, not the agency. Id. at 662. Agencies specialize in making the policy decisions necessary to apply generalized statutory provisions to the complexities of everyday life. FDA v. Brown & Williamson, 529 U.S. 120, 132-33, 120 S.Ct. 1291 (2000). Judges specialize in “say[ing] what the law is,” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). “[W]hen a court construes a statute so as to avoid a difficult constitutional question, it is not making a policy choice,” it is making a legal choice. Babbitt, 115 F.3d at 662. The policy choice remains with the agency, which is “free to adopt any interpretation that doesn’t come perilously close to the constitutional boundary.” Id. at 663.
These authorities establish that where an agency’s interpretation of a statute raises grave constitutional concerns, and where Congress has not clearly indicated it intends a constitutionally suspect interpretation, we can assume Congress did not delegate authority for the interpretation and deem it foreclosed by the statute. ' With this framework in mind, we turn to the agency interpretation before us.
III. The BIA’s new interpretation raises grave constitutional doubts.
The BIA has been express in stating, that it does “not believe that every offense that, by its nature, would tend to ‘obstruct justice’ is an offense that should properly be classified as ‘obstruction of *819 justice.’ ” In re Espinoza-Gonzalez, 22 I. & N. Dec. 889, 893-94 (B.I.A.1999). And the BIA has given some indication of where it draws that line: 18 U.S.C. § 3 (accessory after the fact) is an obstruction of justice crime, whereas 18 U.S.C. § 4 (misprision of felony) is not. Id. at 892. According to the BIA, the distinction between these crimes — and the “critical element” of obstruction of justice crimes — is the “affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice,” regardless of the existence of an ongoing investigation or proceeding. In re Valenzuela Gallardo, 25 I. & N. Dec. 838, 842 (B.I.A.2012). In other words, though the BIA has said that not every crime that tends to obstruct justice qualifies as an obstruction of justice crime, and the critical factor is the interference with the process of justice — which does not require an ongoing investigation or proceeding — the BIA has not given an indication of what it does include in “the process of justice,” or where that process begins and ends. Valenzuela Gallardo argues that this new interpretation raises grave doubts about whether INA § 101(a)(43)(S) is unconstitutionally vague. We agree.
“The Fifth Amendment provides that ‘[n]o person shall ... be deprived of life, liberty, or property, without due process of law,’ ” Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 2556, 192 L.Ed.2d 569 (2015) (alterations in original) (quoting U.S. Constamend. V). The “[v]agueness doctrine is an outgrowth ... of [that clause]. A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.” United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). The Supreme Court has advised:
What renders a statute vague is not the possibility that it will sometimes-be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminaney of precisely- what that fact is. Thus, we have struck down statutes that tied criminal culpability to ... wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings. .
Id. at 306, 128 S.Ct. 1830 (emphasis added). “The prohibition of vagueness in criminal statutes ‘is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,’ and a statute that flouts it ‘violates the first essential of due process.’ ” Johnson, 135 S.Ct. at 2556-57 (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).
Recently, the Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 is unconstitutionally vague because it “denies fair notice to defendants and invites arbitrary enforcement by judges.” Id. at 2257. The residual clause states that a “violent felony” is “any crime punishable by imprisonment for a term exceeding one year ... that ... involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B). The Court held that two features of the clause render it unconstitutionally vague. ■ First, the clause “leaves grave uncértainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined ordinary case of a crime, not to real-world facts or statutory elements.” Johnson, 135 S.Ct. at 2557 (internal quotation marks omitted). Second, the clause creates “uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise ‘serious potential risk’ standard to real-world facts; it is *820 quite' another to apply it to a judge-imagined abstraction.”' Id. at 2558. The Supreme Court concluded: “By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.” Id.
The residual clause left grave uncertainty about the amount of risk it takes for a crime to qualify as a violent felony. The BIA’s new construction leaves grave uncertainty about the plethora of steps before and after an “ongoing criminal investigation or trial” that comprise “the process of justice,” and, hence, uncertainty about which crimes constitute “obstruction of justice.” See In re Valenzuela Gallardo, 25 I. & N. Dec. 838, 841 (B.I.A.2012). We can glean no definition of “the process of justice” from the BIA’s caselaw. See, e.g., id. at 840-41 (distinguishing 18 U.S.C. § 4 (misprision of felony) from 18 U.S.C. § 3 (accessory after the fact) based on § 3’s specific intent requirement).[5]. The phrase “obstruction of justice” has no statutory definition or settled legal meaning. See 8 U.S.C. § 1101 (INA definitions section with no definition of “process of justice”); Black’s Law Dictionary 1329 (9th ed.2009) (providing no definition of “process of justice”). When the BIA clarified that the “process of justice” does not necessarily involve an ongoing investigation or proceeding, it eliminated the narrowing principal Hoang had gleaned from earlier BIA case law. See Trung Thanh Hoang v. Holder, 641 F.3d 1157, 1160-61, 1164 (9th Cir.2011). We do not hold, as the dissent suggests, that “ongoing proceedings” is the only permissible anchor for the “process of justice.” But after Valenzuela Gallardo, arguably everything that happens after someone commits a crime could be considered to be part of the “process of justice,” We cannot reconcile this expansive interpretation with the BIA en banc court’s declaration that it does “not believe that every offense that, by its nature, would tend to ‘obstruct justice’ is an offense that should properly be classified, as ‘obstruction of justice.’ ” In re Espinoza-Gonzalez, 22 I. 4. N. Dec. 889, 893-94 (B.I.A.1999). As the Supreme C.ourt noted in Williams, amorphous terms “without statutory definitions,..narrowing context, or settled legal meanings” raise vagueness concerns. See United States v. Williams, 553 U.S. 285, 306, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).
Absent some indication of the contours of “process of justice,” an unpredictable variety of specific intent crimes could fall within it, leaving us unable to determine what crimes make a criminal defendant deportable under INA § 101(a)(43)(S) and what crimes -do not. See City of Chicago v. Morales, 527 U.S. 41, 57, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion) (invalidating as unconstitutionally vague Chicago’s anti-loitering statute in part because it did not give potential violators notice of “what loitering is covered by the ordinance and what is not”). Moré importantly, because the BIA’s new interpreta *821 tion invites arbitrary enforcement, defense lawyers will be unable to accurately advise their clients about the immigration-related consequences of a conviction'or plea agreement. See Padilla v. Kentucky, 559 U.S. 356, 360, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (holding that defense “counsel had an obligation to advise [defendant] that the offense to which he was pleading guilty would result in his removal from this country”).
What we do know is that, in the INA, Congress identified three types of obstruction-related offenses that qualify as “aggravated felonies” and trigger deportation: “[1] an offense relating to obstruction of justice, [2] perjury or subordination of per-, jury, [3] or,bribery of a witness.” INA § 101(a)(43)(S). Perjury and bribery of a witness are clearly tied to proceedings, and this informs our understanding of Congress’s intended interpretation of “obstruction of justice.” See Microsoft Corp. v. C.I.R., 311 F.3d 1178, 1184 (9th Cir.2002) (“The doctrine of noscitur a sociis counsels that words should be understood by the company they keep.”). Shedding more light on what Congress intended is the list of obstruction of justice crimes Congress, included in Title 18, Chapter 73, on which the BIA based its interpretation of INA § 101(a)(43)(S). See Espinozar-Gonzalez, 22 I. & N. Dec. at 892. The difficulty presented by the BIA’s new interpretation of “obstruction of justice” can be seen by comparing it to the Chapter 73 obstruction of justice crimes. As the BIA has recognized, almost all of these “obstruction of justice offenses \. .• have as an element interference with the proceedings of a tribunal.” -Id.'at 892. The few that do not require interference with a- tribunal or investigation' have" as an element the intent to interfere -.with a specific act associated ‘with a tribunal or ' investigation. See, e.g., 18 U.S.C. § 1512(b)(3) (prohibition on tampering with a witness with the intent to hinder or prevent “communication .to a law enforcement officer” regarding a federal offense); 18 U.S.C. § 1512(d)(2) (prohibition on harassing someone with - the intent to prevent that person from “reporting [a federal crime] to a law enforcement officer or judge”); 18 U.S.C. § 1519 (prohibition on falsifying or. destroying a record “with the intent to impede, obstruct, or influence the investigation or proper administration of any matter” within the jurisdiction of the United States).[6]
The Government and dissent assure us that the BIA’s new interpretation is sufficiently limited because it still requires specific intent. But this does little to answer the question central to our constitutional concerns — specific intent to do what? See United States v. Williams, 553 U.S. 285, 306, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (“What renders a statute vague, however, is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminancy of precisely what that fact is.” (emphasis added)). Though it ostensibly defines the required mens rea — intent to interfere with the “process of justice” — it provides little instruction on the equally important actus reus. Cf. Leal v. Holder, 771 F.3d 1140, 1146 (9th Cir.2014) (“[B]oth the actus reus *822 and the mens rea must be considered in concert to determine whether the behavior they describe is sufficiently culpable.” (citation omitted)); Trung Thanh Hoang v. Holder, 641 F.3d 1157, 1161 (9th Cir.2011) (“Espinozar-Gonzalez ‘articulated both an actus reus and mens rea element of the generic definition of [obstruction of justice] crimes for purposes of § 1101(a)(43)(S).’ ” (alteration in original) (citation omitted)). Specific intent does little to accord fair notice when there is no indication of what it is that must be interfered with in order to “obstruct justice.”
The Government also argues that the one-year sentence requirement offers a limitation on its interpretation. See INA § 101(a)(43)(S). But as with the specific intent element, the one-year sentence requirement does not reduce the indeterminacy of the type of conduct that qualifies as an aggravated felony. Indeed, in the context of accessory after the fact, the one-year sentence actually reflects the severity of an underlying crime committed by another person. The residual clause the Supreme Court examined in Johnson also required a one-year sentence. 135 S.Ct. at 2555. There, the sentence at least reflected the crime actually committed by the defendant at issue, see 18 U.S.C. § 924(e)(2)(B) (“[T]he term ‘violent felony* means any crime punishable by imprisonment for a term exceeding one year.”), but even so, the length-of-sentence limitation was insufficient to salvage the clause from its vagueness. See Johnson, 135 S.Ct. at 2563. We see no reason for concluding that the same one-year sentence requirement is sufficient to dispel the serious constitutional doubts presented here.
The dissent reads our opinion as imposing a “temporal nexus requirement” on the BIA’s definition of “crimes relating to obstruction of justice.” Dissent at 826. It doesn’t. We do not hold that the BIA’s definition of “obstruction of justice” must be tied to an ongoing proceeding; rather, we hold that the BIA’s new interpretation of obstruction of justice raises grave constitutional concerns because it uses an amorphous phrase — “process of justice”— without telling us what that phrase means. It is difficult to imagine a specific intent crime that could not be swept into the BIA’s expanded definition. The problem is the absence of any narrowing context— not necessarily the specific narrowing context of a tie to “ongoing proceedings.”[7] The BIA is free to define obstruction of justice as it sees fit on remand, as long as the definition is not unworkably vague.[8]
*823 IV. Under the constitutional avoidance doctrine, we do not defer to the BIA’s new construction.
Having determined that the BIA’s new interpretation creates serious constitutional doubts, we must determine whether Congress “[made] it clear that it chooses the constitutionally doubtful interpretation.” Williams v. Babbitt, 115 F.3d 657, 663 (9th Cir.1997). We see no such indication. All of Congress’s express examples of obstruction of justice contemplate ongoing proceedings or investigations ■ or are otherwise sufficiently specific to provide notice of what conduct is prohibited. See 18 U.S.C. §§ 1501-1502, 1504-1521; supra Section III. And although the catchall provision in 18 U.S.C. § 1503 pertains to anyone who “influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice,” courts have universally construed this broad language to require an ongoing proceeding:
Recent decisions of Courts of Appeals have likewise tended to place metes and bounds on the very broad language of the catchall provision. The action taken by the accused must be ivith an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court’s or grand jury’s .authority. United States v. Brown, 688 F.2d 596, 598 (9th Cir.1982) (citing cases). Some courts have phrased this showing as a “nexus” requirement — that the act must have a relationship in time, causation, or logic with the judicial proceedings. United States v. Wood, 6 F.3d 692, 696 (10th Cir.1993); United States v. Walasek, 527 F.2d 676, 679 & n. 12 (3d Cir.1975). In other words, the endeavor must have the “‘natural and probable effect’ ” of interfering with the due administration of justice. Wood, 6 F.3d at 695; United States v. Thomas, 916 F.2d 647, 651 (11th Cir.1990); Walasek, 527 F.2d at 679.... But ... if the defendant lacks knowledge that his actions are likely to affect the' judicial proceeding, he lacks the requisite intent to obstruct.
United States v. Aguilar, 515 U.S. 593, 599, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (emphasis added); see also In re Espinoza-Gonzalez, 22 I, & N. Dec. 889, 892 (B.I.A.1999) (noting that, the Supreme Court has “narrowly” construed the catchall provision).[9] As the BIA itself observed *824 in Espinoza-Gonzalez, even the broadest obstruction of justice provisions intend “to protect' individuals assisting in a federal investigation or judicial proceeding and to prevent a miscarriage of justice in. any case pending in a federal court.” 22 I. & N. Dec. at 892. We see no indication Congress intended that “obstruction of justice” be interpreted as' broadly as' the BIA has done here.
Further, and contrary to. the dissent’s argument, the fact that Congress defined “aggravated felony” to include not just obstruction of justice offenses but offenses “relating to obstruction of justice” does not indicate its intent that the BIA “push the constitutional envelope.” Williams v. Babbitt, 115 F.3d 657, 662 (9th Cir.1997). The use of the modifier “relating to” broadens the INA’s intended reach, but it is not an explicit indication that Congress intended that the BIA approach' the constitutional boundary, nor is it an excuse for abdicating our role. See Mellouli v. Lynch, — U.S. —, 135 S.Ct. 1980, 1990, 192 L.Ed.2d 60 (2015) (striking down the BIA’s interpretation of an aggravated felony “relating to a controlled substance,” INA § 237(a)(2)(B)(I), as inconsistent with congressional intent). If Congress wishes to authorize such a result, “it must do so explicitly.” Babbitt, 115 F.3d at 662.
For over a decade, we upheld the interpretation that the BIA announced in Espinoza-Gonzalez — requiring a nexus to an ongoing proceeding — as a plausible construction. See Trung Thanh Hoang v. Holder, 641 F.3d 1157, 1161, 1164 (9th Cir.2011); Salazar-Luviano v. Mukasey, 551 F.3d 857, 860 (9th Cir.2008); Renteria-Morales v. Mukasey, 551 F.3d 1076, 1086-87 (9th Cir.2008). This demonstrates that “a less constitutionally troubling construction is readily available.” See Babbitt, 115 F.3d at . 666. We do not independently inquire into another interpretation, see DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 577, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988); we leave it to the BIA to “adopt any interpretation that doesn’t come perilously close to the constitutional boundary.” See Babbitt, 115 F.3d at 663. “And, of course, Congress may ... remov[e] the statutory ambiguity and- mak[e] it clear that it chooses- the constitutionally doubtful interpretation — in which event, the courts will have to confront the constitutional question squarely.” Id.
Our decision to remand to the BIA, rather than attempt to reconcile the questions that arise from the interpretation its three-judge panel announced in Valenzuela Gallardo, is consistent with the charge from Congress that the BIA administer the INA. See Gonzales v. Thomas, 547 U.S. 183, 186, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam). It is aíso consistent with the governmént’s request in its supplemental briefing that the court remand for the Board to provide an alternative definition of the ambiguous statute if we agree with the petitioner’s view of this one.
We remand to the agency so that it can either offer a new construction of INA § 101(a)(43)(S) or, in the alternative," apply Espinoza-Gonzalez’s interpretation to the instant case. .
*825 CONCLUSION
We grant Valenzuela Gallardo’s petition for review and remand to the BIA for proceedings consistent with this opinion.
PETITION GRANTED AND REMANDED.

. The catchall phrase in § 1503 provides that obstruction of justice includes a person who “corruptly, or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice.” 18 U.S.C. § 1503(a).

. In its briefing and at oral argument, the government made clear that the operative definition of "obstruction of justice” is the one the BIA announced in Valenzuela Gallardo, so that is the one we review. The dissent would have us review a construction that is narrower and more concrete than the one the BIA advocates. Dissent at 830. The dissent also quarrels with our characterization of the BIA’s interpretation of INA § 101 (a)(43)(S) as "new,” see Dissent, Section I, but the government did not dispute that this is a new interpretation. More to the point, whether the BIA's definition is new, newly clarified, or merely "a change from this Circuit's interpretation of BIA precedent,” Dissent at 825, the BIA in Valenzuela Gallardo "invoke[d] ... Brand X” and set out the operative construction of "obstruction of justice.” Valenzuela Gallardo, 25 I. & N. Dec. at 840. "Under Brand X," it is our duty to review "the BIA’s *815 most recent interpretation.” Anaya-Ortiz v. Holder, 594 F.3d 673, 678 (9th Cir.2010); see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

. Valenzuela Gallardo argues that the BIA cannot depart from our court’s decision in Hoang or its own prior interpretation in Espinoza-Gonzalez. We disagree. In National Cable & Telecommunications Ass.’n v. Brand X Internet Services, the Supreme Court expressly instructed that "[a] court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.” 545 U.S. 967, 982, 125 S.Ct. 2688 (2005). Because our prior interpretations of § 101(a)(43)(S) did not follow unambiguously from the statute, see Hoang, 641 F.3d at 1161, the BIA was free to interpret the phrase "obstruction of justice”, in a manner inconsistent with.those precedents. Therefore, "[ujnder Brand X, we must apply Chevron deference to the BIA’s most recent interpretation” if Congress has not directly spoken to the issue and the BIA’s interpretation is reasonable. Anaya-Ortiz v. Holder, 594 F.3d 673, 678 (9th Cir.2010).

. The dissent criticizes our mode of Chevron -analysis and the use of the doctrine of constitutional avoidance at Chevron Step One. See Dissent at 831-32 (quoting Olmos v. Holder, 780 F.3d 1313, 1320-21 (10th Cir.2015)). The dissent is incorrect, however, that we only ask whether Congress intended an implicit delegation in "extraordinary cases.” See Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778 (directing courts to determine whether Congress explicitly or implicitly -delegated authority to an agency); Dissent at 832-33. Rather, when read in context, the cases invoked by the dissent stand for the-proposition that we should hesitate to find an implicit delegation in "extraordinary cases” of “economic and political significance." King v. Burwell, 135 S.Ct. 2480, 2489 (2015) (emphasis added) (concluding that the potential implicit' delegation at issue was of such "deep economic and political significance” that "had Congress wished to assign that question to an agency, it surely would have done so expressly”); Brown & Williamson, 529 U.S. at 159-60, 120 S.Ct. 1291 (concluding that “Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion”). Here, where the potential implicit delegation is not one of deep "economic and political significance,” we must turn to other tools to assess Congressional intent, such as the constitutional avoidance doctrine.
Furthermore, even the dissent acknowledges that the Supreme Court applies the constitutional avoidance doctrine in the Chevron context, Dissent at 831-32; DeBartolo, 485 U.S. at 575-76, 108 S.Ct. 1392, and our en banc authority says that the doctrine is inapplicable at Step Two, Morales-Izquierdo, 486 F.3d at 492-93. That leaves Step One, lest we abdicate our role.

. At oral argument, the government would only go so far as to say that interference with the "process -of justice” includes interfering with another person’s arrest or apprehension.. This only confirms that a conviction under California’s accessory after the fact statute is a crime "relating to the obstruction of justice.” See Cal.Penal Code § 32 ("Every person who, after a felony has been committed ..'. aids a principal in such felony, with the intent that such principal may avoid escape from arrest, trial, conviction or punishment ... is an accessory to such felony.”). The government's response, does not provide .a limiting principal or tell us what crimes— other than § 32 — fall within and outside the nebulous "process of justice."

. The dissent discusses examples of crimes that clearly fall within the BIA’s new interpretation, but we are concerned with the outer edges of the definition, not its core. The fact that the BIA’s interpretation encompasses conduct Congress undoubtedly intended to include in “obstruction of justice,” see 18 U.S.C. §§ 1501-1521, does not resolve the due-process concern'presented by the phrase “the process of justice.” In Johnson, the Supreme Court reaffirmed that its case law “squarely contradices] the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision’s grasp.” 135 S.Ct. at 2561,

. The dissent argues that "the BIA’s definition is not missing the required nexus” to "a foreseeable or contemplated proceeding,” Dissent at 833-34, and suggests that the BIA’s interpretation of “obstruction of justice” requires a nexus to an ongoing or contemplated proceeding or investigation. But this is not what the BIA said in Valenzuela Gallardo or in oral argument before our court. In Valenzuela Gallardo, the BIA articulated that “the existence of such proceedings is not an essential element of ‘an offense relating to obstruction of justice.’” 25 I. & N. Dec. at 841. If, as the dissent suggests, the BIA intends interference with the "process of justice” to mean interference with an ongoing or foreseeable or contemplated investigation or proceeding, it can clarify this on remand.

. The dissent argues that we create or exacerbate a circuit split with the Second, Third, Fifth, and Eighth Circuits. See Dissent at 830 & n. 6. We don’t. Our sister circuits do not address whether the BIA’s interpretation of "obstruction of justice” is unconstitutionally vague in any of the cases cited by the dissent. See Armenta-Lagunas v. Holder, 724 F.3d 1019, 1020-21 (8th Cir.2013); Higgins v. Holder, 677 F.3d 97, 98-99 (2d Cir.2012) (per curiam); Denis v. Attorney General, 633 F.3d 201, 207-09 (3d Cir.2011). "Nexus to an ongoing proceeding” was not at issue in Ar-menta-Lagunas or Higgins because the state statutes in those cases plainly required such a nexus. See Armenta-Lagunas, 724 F.3d at 1023; Higgins, 677 F.3d at 105 (noting that the Connecticut statute "require[s] a nexus to an official proceeding”). In United States v. *823 Gamboa-Garcia, 620 F.3d 546 (5th Cir.2010) — a case decided before Valenzuela Gallardo and Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013) — the Fifth Circuit relied on the alien’s conduct, not the elements of her crime of conviction, to decide that the crime ”relat[ed] to obstruction of justice.” Gamboa-Garcia, 620 F.3d at 549-50. The conduct was extreme: Gamboa-Garcia witnessed a murder, drove and cleaned up the getaway car, financed the murderer’s escape, and lied to police. Id. at 547. The dissent also overlooks that our circuit has long disagreed with the Third Circuit’s interpretation of INA § 101(a)(43)(S). In fact, our circuits’ views depart from' the get-go because the Third Circuit does not even, consider the undefined term "obstruction of justice" to be ambiguous. See Denis, 633 F.3d at 207-09, 211 & n. 12 (”[W]e again depart from the view adopted by the Ninth and Fifth Circuit Courts of Ap-peals____”). Contrary to the dissent’s assertion, our decision does not create or exacerbate a circuit split.

. Judicial interpretations of § 1503 are particularly relevant here because the BIA’s construction pertains to a criminal statute, where federal courts — not administrative agencies— have expertise. See Leocal v. Ashcroft, 543 U.S. 1, 11 n. 8, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) ("Although here we deal with [18 U.S.C.] § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.”); Mugalli v. Ashcroft, 258 F.3d 52, 56 *824 (2d Cir.2001) ("But the BIA’s conclusion that a conviction under 18 U.S.C. § 513(a) necessarily constituted an 'attempt’ as the BIA had defined it depended on an analysis of a federal criminal statute and was thus beyond the BIA's administrative responsibility and expertise, That conclusion was therefore entitled to no deference from-us.” (emphasis added)). Because the BIA has expertise in interpreting the INA, but not the federal criminal code, there is less reason to defer. See, e.g., Carachuri-Rosendo v. Holder, 560 U.S. 563, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010) (striking down BIA interpretation of aggravated felony provision without mentioning Chevron deference).