**George Lewis TAYLOR, Jr.,
Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

April 6, 1976.

James P. Diamond and Joe C. Morris, Jackson, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, George W. Hymers, Jr., Dist. Atty. Gen., Jackson, Howard F. Douglass, Asst. Dist. Atty. Gen., Lexington, Willard E. Smith, Sp. Prosecuter, Henderson, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below, George Lewis Taylor, Jr., was indicted by the Chester County grand jury for larceny by trick by stealing $7250 from the First State Bank of Henderson by a check-writing scheme with intent to defraud the bank in violation of TCA 39–4202 ("Larceny" defined). The petit jury found him guilty of grand larceny and fixed his punishment at three to five years in the penitentiary. He appeals in error.

■ The defendant insists that the facts of this case do not support a conviction for larceny. We agree and reverse.

The defendant, an attorney, had for collection a claim of the Ohio Valley Livestock Company amounting to about $70,000 against Gerald Castelow, an Alamo farmer and meat packer doing business as West Tennessee Packing Company. Threatening suit to close his business, the defendant sought to get Castelow to pay $10,000 on the claim and Castelow told him he could pay $5000 at that time. After further discussion, Castelow gave him on June 7, 1974, a check drawn on the Bank of Halls for $7250 payable to "Ohio Valley Liv. and Lew Taylor, Attorney." The defendant is also known as Lew Taylor.

In his testimony Castelow says he told the defendant he could not cover the check then and that he could probably do so in about two weeks. He says the defendant told him he would hold the check two weeks and to get a loan to cover it. He testified that the defendant was supposed to hold the check a week or ten days or two weeks, something like that. He also said that the defendant helped him with some papers to make a loan to pay off his indebtedness. The check was dated the day it was given.

The defendant testified that his client was urging him to get an attachment and to close Castelow's business; that he tried to arrange a loan so Castelow could pay the entire debt; that Castelow told him the check would clear because he was in the process of selling goods and that he told Castelow he would deposit the check.

The defendant deposited Castelow's check that day (June 7) in his trust account at the First State Bank. He had opened this account June 6 with a $408.89 deposit. That day he drew a check on this account for $7350 and deposited it in his account at the Planters Bank of Maury City. The First State Bank paid this check in regular course of business from the defendant's account.

It is apparent that in May and June 1974 the defendant was short on cash and credit. His deposit in the Planters Bank of Maury City was used to pay a check he had previously given the Chester County Bank and which had been returned by the Planters Bank for insufficient funds.

When the check written by Castelow arrived at the Bank of Halls, an official or employee there, according to Castelow, called him and asked what to do. He told the bank to stop payment. Castelow said it is possible he had sufficient funds in the bank to cover the check but he had other debts, too. After the stop order, the check was returned from the Bank of Halls to the First State Bank. On inquiry about it, the defendant told the assistant cashier to send it through again. This was likewise unsuccessful and the defendant told that bank officer he would attempt to get the matter cleared up. On the defendant's request, the bank sent the check back for the third time with the same result. This prosecution followed.

Castelow gave his check as a payment on a legitimate debt. There was no collusion between him and the defendant. The disputed fact is whether he told the defendant to hold the check one to two weeks or whether the defendant was told to deposit it immediately. The check was not postdated and the defendant was under no legal obligation to hold it for any period of time. By Castelow's evidence, he only wanted the check held a short time. He did not deny he had sufficient funds to honor the check but said he had more things coming in. He

had been willing to pay $5000 without any delay. According to the state's evidence, the defendant would have expected the check to be paid in one to two weeks.

The most that this evidence shows is that the defendant deposited and received credit for a check that would not be paid for one to two weeks. The debt involved was legitimate and he did not know that Castelow would enter a stop payment order and that he then would not lift the order. By the state's evidence, he would at most plan at the time of his deposit to use the bank's credit two weeks. When the defendant deposited the check, he made no fraudulent representation to the bank.

■  Under the facts of this case, we find no larceny proven. An essential element of the crime of larceny is an intent to deprive the owner of his property, not temporarily, but permanently. *Fields v. State,* 46 Tenn. 524 (1869). These facts do not make out larceny by trick, artifice or strategem which requires the same intent. The requisite intent to steal is lacking.

■  We find no error in the trial judge's refusal to grant a change of venue because it developed on voir dire examination that most of the jurors had done business with the First State Bank. The trial judge did not abuse his discretion on this late request. See *Wilson v. State,* 2 Tenn.Cr.App. 138, 452 S.W.2d 355.

■  The defendant also assigns as error the trial judge's refusal to grant a mistrial when a state's witness, the bank president, on cross-examination, accused the defendant of forgery of the endorsement. Incompetent evidence elicited on cross-examination cannot be complained of. *Pulley v. State,* Tenn.Cr.App., 506 S.W.2d 164. This assignment is without merit.

We likewise find no error in the instructions.

Reversed and dismissed.

RUSSELL and DUNCAN, JJ., concur.