# Matter of Guillermo DIAZ-LIZARRAGA, Respondent

*Decided November 16, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A theft offense is a crime involving moral turpitude if it involves a taking or exercise of control over another's property without consent and with an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded.

(2) Shoplifting in violation of section 13-1805(A) of the Arizona Revised Statutes is categorically a crime involving moral turpitude.

FOR RESPONDENT: Laura M. St. John, Esquire, Florence, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY: Elly Laff, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY and GREER, Board Members; GELLER, Temporary Board Member.

PAULEY, Board Member:

In a decision dated February 10, 2016, an Immigration Judge terminated the removal proceedings against the respondent. The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico and lawful permanent resident of the United States. In July 2015, the DHS charged him with removability under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2012), as an alien convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct. In support of that charge, the DHS presented evidence indicating that the respondent was convicted in 2010, 2012, and 2013 of shoplifting property worth less than $1,000 in violation of section 13-1805(A) of the Arizona Revised Statutes. At all relevant times, that section has provided, in pertinent part, as follows:

> A person commits shoplifting if, while in an establishment in which merchandise is displayed for sale, the person knowingly obtains such goods of another *with the intent to deprive* that person of such goods by:
>      1. Removing any of the goods from the immediate display or from any other place within the establishment without paying the purchase price; or
>      2. Charging the purchase price of the goods to a fictitious person or any person without that person's authority; or
>      3. Paying less than the purchase price of the goods by some trick or artifice such as altering, removing, substituting or otherwise disfiguring any label, price tag or marking; or
>      4. Transferring the goods from one container to another; or
>      5. Concealment.

(Emphasis added.)  For purposes of this provision, section 13-1801(A)(4) of the Arizona Revised Statutes defines the term "deprive" as follows:

> "Deprive" means to withhold the property interest of another either permanently or for so long a time period that a substantial portion of its economic value or usefulness or enjoyment is lost, to withhold with the intent to restore it only on payment of any reward or other compensation or to transfer or dispose of it so that it is unlikely to be recovered.[1]

There is no dispute that the respondent sustained his shoplifting convictions.  However, the Immigration Judge dismissed the removal charge and terminated the proceedings, concluding that section 13-1805(A) is overbroad relative to the definition of a crime involving moral turpitude because the term "deprive" is defined in such a manner that a shoplifter need not intend to "permanently" deprive the owner of the property in order to be convicted, as required by our precedent decisions.  The Immigration Judge also found that section 13-1805(A) is an "indivisible" statute relative to the definition of a turpitudinous offense, thus precluding him from consulting the respondent's conviction record under the modified categorical approach.

The DHS argues on appeal that shoplifting under section 13-1805(A) is a *categorical* crime involving moral turpitude.  According to the DHS, in finding to the contrary, the Immigration Judge misinterpreted the statute's elements and misunderstood our decisions addressing when a theft offense should be considered a crime involving moral turpitude.  The respondent opposes the appeal.  Whether a particular offense involves moral turpitude

---

[1]  The DHS argues on appeal that the definition of the term "deprive" in section 13-1801(A)(4) does not apply to the respondent's offense of conviction.  We disagree.

is a legal question that we review de novo.  8 C.F.R. § 1003.1(d)(3)(ii) (2016).

## II.  ANALYSIS

The phrase "crime involving moral turpitude" describes a class of offenses involving "reprehensible conduct" committed with some form of "scienter"—that is, with a culpable mental state, such as specific intent, deliberateness, willfulness, or recklessness.  *See, e.g.*, *Matter of Leal*, 26 I&N Dec. 20, 21 (BIA 2012); *see also Matter of Silva-Trevino*, 26 I&N Dec. 826, 828 n.2, 833–34 (BIA 2016).  Conduct is "reprehensible" if it is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Leal*, 26 I&N Dec. at 25 (quoting *Matter of Ruiz-Lopez*, 25 I&N Dec. 551, 553 (BIA 2011)).  To determine whether an offense is a crime involving moral turpitude, we employ the categorical approach, which requires us to focus on the elements of the crime, rather than the conduct of the respondent.  *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 475 (9th Cir. 2016) (en banc); *Matter of Silva-Trevino*, 26 I&N Dec. at 831–33.

From the Board's earliest days we have held that a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to *permanently* deprive an owner of property.  *See, e.g.*, *Matter of Grazley*, 14 I&N Dec. 330, 333 (BIA 1973) ("Ordinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended."); *Matter of P-*, 2 I&N Dec. 887, 887 (BIA 1947) (holding that the Canadian statute of conviction did not require an intent to permanently deprive the owner of her property and therefore did not involve moral turpitude); *Matter of H-*, 2 I&N Dec. 864, 865 (Central Office, BIA 1947) ("[T]he element which must exist before the crime of theft or stealing is deemed one involving moral turpitude is that the offense must be one which involves a permanent taking as distinguished from a temporary one."); *Matter of T-*, 2 I&N Dec. 22, 27 (BIA, A.G. 1944) (concluding that theft under the law of Canada is a crime involving moral turpitude even though intent to deprive may be permanent or temporary);[2]

---

[2]  The Attorney General reversed the Board's decision, stating that "it is quite apparent to me that a person may be convicted of theft in Canada when the real offense is not known by that name in our law and does not involve moral turpitude."  *Matter of T-*, 2 I&N Dec. at 42.  While the Attorney General's short decision reversed the Board, it did not do so based on a legal conclusion that only an intent to deprive permanently would suffice to render an offense turpitudinous.  Instead, the reversal appears to have been based on the Attorney General's conclusion that the Canadian statute covered violations

(continued . . .)

*Matter of D-*, 1 I&N Dec. 143, 145–46 (BIA 1941) (holding that driving an automobile without the consent of the owner is not a turpitudinous offense because the statute reached cases where there was only an intent to temporarily deprive, which might involve mere prankishness).[3]   At the same time, we have found it appropriate to presume—absent evidence to the contrary—that retail theft and theft of cash involve an intent to permanently deprive the owner of the merchandise or cash, without the necessity of affirmative proof. *See Matter of Jurado*, 24 I&N Dec. 29, 33–34 (BIA 2006); *Matter of Grazley*, 14 I&N Dec. at 333.

A careful examination of our early cases reflects that our purpose in adopting the "intent to permanently deprive" requirement was to distinguish between substantial and reprehensible deprivations of an owner's property on the one hand and, on the other, mere de minimis takings in which the owner's property rights are compromised little, if at all. It is telling in this regard that all of our early cases involved theft statutes that were phrased or interpreted to encompass "joyriding"—the nonconsensual taking of a motor vehicle with the intent to return it to the owner shortly thereafter—or other short-term takings of property. For example, we explained in *Matter of P-*, 2 I&N Dec. at 887–88, that

_____

where the intent to deprive was de minimis and thus outside the scope of what was properly regarded as theft.

The dissenting Board Member set forth the circumstances in two pending cases that he argued should not be deemed crimes involving moral turpitude because the deprivation was too ephemeral. *Id.* at 31–32 (Wasserman, dissenting). One such case involved an alien who "borrowed a ring, valued at $50, from a friend, only to wear at a party and with the intention of returning it that night. This was done without her friend's knowledge. A boy at the party took the ring from the respondent and refused to return it." *Id.* at 31. The alien was nevertheless convicted under the Canadian theft statute at issue.

Such cases illuminate the Attorney General's finding that persons may be convicted of theft in Canada even though the offense would not be considered a crime involving moral turpitude under the laws of the United States. *Id.* at 42. We therefore do not find that the Attorney General's decision in *Matter of T-* precludes us from reconsidering our prior decisions in this area. Nor have any of our subsequent decisions adopting a distinction between temporary and permanent takings indicated that the Attorney General's decision imposed such a constraint.

[3]   The "intent to permanently deprive" requirement is echoed in precedents of the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises. *See, e.g., Almanza-Arenas v. Lynch*, 815 F.3d at 476; *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159–60 (9th Cir. 2009); *Flores Juarez v. Mukasey*, 530 F.3d 1020, 1022 (9th Cir. 2008) (per curiam); *United States v. Esparza-Ponce*, 193 F.3d 1133, 1136–37 (9th Cir. 1999). However, the Ninth Circuit did not render an independent analysis of the moral turpitude issue, deferring instead to our precedent decisions. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc) (deferring to a published Board decision finding an offense to be morally turpitudinous).

> the appellant is not inadmissible because of his conviction in Canada in 1947 for violation of section 285 (3), Criminal Code of Canada. It has been determined that such statute is similar to the various statutes in this country covering "joy riding" and does not comprehend theft of automobile or intent to deprive the owner thereof permanently, and, therefore, does not involve moral turpitude . . . .
>
>      . . . .
>
>    The appellant testified that he entered the home of a Mrs. C— in Rockport, Ontario, Canada, through an open window, to obtain a victrola for use at a party and thereafter return same. He admitted that he did not secure Mrs. C—'s permission, since she was then residing in the United States. The evidence establishes that the taking was purely a temporary one . . . .

We continue to believe that it is appropriate to distinguish between substantial and de minimis takings when evaluating whether theft offenses involve moral turpitude. However, criminal law has evolved significantly in the seven decades since we first addressed this issue. In most jurisdictions, legislation and judicial opinions have refined the distinction between substantial and de minimis takings to such an extent that the traditional dichotomy of permanent versus temporary takings has become anachronistic. In particular, responding to new economic and social realities, lawmakers and judges across the country have come to recognize that many temporary takings are as culpable as permanent ones. This trend finds cogent expression in section 223.0(1) of the Model Penal Code, which addresses theft crimes generally and defines the term "deprive" as

> (a) to withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or (b) to dispose of the property so as to make it unlikely that the owner will recover it.

Nineteen States—including Arizona—have adopted the Model Penal Code's definition of the term "deprive" more or less verbatim.[4] Five other

---

[4]  Ala. Code § 13A-8-1(2) (2016); Alaska Stat. Ann. § 11.46.990(8) (West 2016); Ariz. Rev. Stat. Ann. § 13-1801(A)(4) (2016); Ark. Code Ann. § 5-36-101(5) (West 2016); Del. Code Ann. tit. 11, § 857(3) (West 2016); Haw. Rev. Stat. Ann. § 708-800 (West 2016); Ky. Rev. Stat. Ann. § 514.010(1) (West 2016); Me. Rev. Stat. Ann. tit. 17-a, § 352(3) (2016); Md. Code Ann., Crim. Law § 7-101(c) (West 2016); Minn. Stat. Ann. § 609.52 (West 2016); Neb. Rev. Stat. § 28-509(1) (West 2016); N.H. Rev. Stat. Ann. § 637:2, III (2016); N.J. Stat. Ann. § 2C:20-1a (West 2016); N.D. Cent. Code Ann. § 12.1-23-10(3) (West 2016); Ohio Rev. Code Ann. § 2913.01(C) (West 2016); 18 Pa. Stat. and Cons. Stat. Ann. § 3901 (West 2016); Tex. Penal Code Ann. § 31.01(2) (West 2016); Utah Code Ann. § 76-6-401(3) (West 2016); Wyo. Stat. Ann. § 6-3-401(a)(ii) (West 2016).

States have statutes that essentially track the Model Penal Code, omitting solely the mental state of "intent to restore only upon payment of reward or other compensation."[5] Eighteen States define theft or larceny by statute but do not include an explicit statutory provision concerning the duration of the intended deprivation. Of these 18 States, 15 have adopted variants of the Model Penal Code approach through case law, holding that the perpetrator must intend to deprive the owner of the property permanently *or* for so extended a period as to deprive the owner of a major portion of its value or enjoyment.[6] Only five States have retained the intent to permanently deprive an owner of property as an explicit statutory requirement.[7] Statutes in two States explicitly permit conviction for theft on a showing of intent to temporarily deprive an owner of property.[8] Our case law has not kept pace with these developments.

For the reasons that follow, we now update our existing jurisprudence and hold that the Arizona shoplifting statute at section 13-1805(A) defines a categorical crime involving moral turpitude despite the fact that it does not require the accused to intend a *literally* permanent taking. At the outset, we find that a taking or exercise of control over another's property *without consent* is itself a potentially reprehensible act that is inherently

---

[5] Conn. Gen. Stat. Ann. § 53a-118(a)(3) (West 2016); Idaho Code Ann. § 18-2402(3) (West 2016); Mont. Code Ann. § 45-6-301 (West 2016); N.Y. Penal Law § 155.00(3) (McKinney 2016); Or. Rev. Stat. Ann. § 164.005(2) (West 2016).

[6] *See People v. Avery*, 38 P.3d 1, 3–4 (Cal. 2002); *State v. Berger*, 438 N.W.2d 29, 31 (Iowa Ct. App. 1989); *Commonwealth v. DiJohnson*, 830 N.E.2d 1103, 1106 (Mass. App. Ct. 2005); *People v. Cain*, 605 N.W.2d 28, 42–45 (Mich. Ct. App. 1999); *Berry v. State*, 754 So. 2d 539, 542 (Miss. Ct. App. 1999); *Harvey v. State*, 375 P.2d 225, 226 (Nev. 1962); *State v. Rhea*, 523 P.2d 26, 28 (N.M. Ct. App. 1974); *State v. Perry*, 204 S.E.2d 889, 891 (N.C. Ct. App. 1974); *Phipps v. State*, 572 P.2d 588, 591 (Okla. Crim. App. 1977); *State v. McWilliams*, 47 A.3d 251, 257–58 (R.I. 2012); *Kerrigan v. State*, 406 S.E.2d 160, 161 (S.C. 1991); *Taylor v. State*, 542 S.W.2d 825, 827 (Tenn. Crim. App. 1976); *State v. Hanson*, 446 A.2d 372, 374–75 (Vt. 1982); *Williams v. Commonwealth*, 696 S.E.2d 233, 235 (Va. Ct. App. 2010); *State v. Hudson*, 206 S.E.2d 415, 419 (W. Va. 1974). Two of the remaining three States provide, in case law, that a temporary deprivation is sufficient. *Bennett v. State*, 871 N.E.2d 316, 322 (Ind. Ct. App. 2007); *State v. Komok*, 783 P.2d 1061, 1063–64 (Wash. 1989) (en banc). Finally, in South Dakota the distinction between intent to temporarily or permanently deprive does not appear to have been addressed in the case law. *See* S.D. Codified Laws § 22-1-2(12) (2016).

[7] 720 Ill. Comp. Stat. Ann. § 5/15-3 (West 2016); Kan. Stat. Ann. § 21-5111(f) (West 2016); La. Stat. Ann. § 14:67(A) (2016); Mo. Ann. Stat. § 570.010(8) (West 2016); Wis. Stat. Ann. § 943.20(1)(a) (West 2016).

[8] Fla. Stat. Ann. § 812.014(1)(a) (West 2016); Ga. Code Ann. § 16-8-1(1)(A) (West 2016). The Colorado theft statute at section 18-4-401(1) appears to be divisible, with some sections requiring an intent to permanently deprive and others not.

base and contrary to the moral duties owed between persons and to society in general, and we therefore conclude that such a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded.

Take, for example, the situation in *Matter of T-*, 2 I&N Dec. 22, which involved the taking of a ring with the intent to only wear it at a party that same night. Consider instead that the alien in that case had the intent to keep the ring for some years until the taker's daughter was married and to then return it anonymously. We would deem that crime to be one involving moral turpitude because it was meant to substantially, albeit not permanently, deprive the owner of her property. It is not a valid defense to a crime involving moral turpitude charge that a thief may have intended to return the stolen property after the passage of so much time that its value to the owner has been lost or substantially eroded. Likewise, the fact that an offender may be willing to restore stolen property to its owner if paid a ransom or reward does not serve to mitigate the culpability of the offense or transform it into a nonreprehensible "temporary" taking.[9]

Moreover, viewing the matter from a modern perspective, we conclude that our early jurisprudence does not provide us with good reasons to persist in the rule that moral turpitude requires a taking involving a *literally* permanent intended deprivation. As noted previously, those early cases

---

[9] This perspective finds implicit support in the series of Ninth Circuit precedents holding that theft under section 484 of the California Penal Code is a categorical crime involving moral turpitude because it requires as an element that the accused have "the specific intent to deprive the victim of his property permanently." *See Castillo-Cruz*, 581 F.3d at 1160 (quoting *People v. Albert A.*, 55 Cal. Rptr. 2d 217 (Cal. Ct. App. 1996); then citing *People v. Guerra*, 708 P.2d 1252 (Cal. 1985); and *People v. Butler*, 421 P.2d 703 (Cal. 1967) (in bank), *overruled on other grounds by People v. Tufunga*, 987 P.2d 168 (Cal. 1999)); *Flores Juarez*, 530 F.3d at 1022; *Esparza-Ponce*, 193 F.3d at 1136–37.

We agree with those decisions. As the California Supreme Court has made abundantly clear, however, "[t]he word 'permanently,' as used here is not to be taken literally." *People v. Davis*, 965 P.2d 1165, 1169 (Cal. 1998) (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 327 (3d ed. 1982)) (stating that in three relevant categories of cases, "the requisite intent to steal may be found even though the defendant's primary purpose in taking the property is not to deprive the owner permanently of possession: i.e., (1) when the defendant intends to 'sell' the property back to its owner, (2) when the defendant intends to claim a reward for 'finding' the property, and (3) when . . . the defendant intends to return the property to its owner for a 'refund'"); *see also People v. Avery*, 38 P.3d at 6 (holding that the requirement of "intent to deprive another of the property permanently[] is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment").

concerned instances where the taking involved a de minimis deprivation of the owner's property rights, such as joyriding or "borrowing" a Victrola or ring for short-term use at a party.[10]  In noting that those offenses were not crimes involving moral turpitude because they involved merely "temporary" deprivations, we made no attempt to distinguish between such de minimis takings and those more serious cases in which property is taken "temporarily" but returned damaged or after its value or usefulness to the owner has been vitiated.[11]  Yet this distinction—which is embodied in the Model Penal Code and echoed in most States' laws—is now an important aspect of modern American theft jurisprudence.  Under the circumstances, we are convinced that the mere antiquity of our case law is not a sound reason for continuing to adhere to it.  *See* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV.  It is still more revolting if . . . the rule simply persists from blind imitation of the past.").

Turning to the present facts, we observe that section 13-1805(A) of the Arizona Revised Statutes embodies a mainstream, contemporary understanding of theft, which requires an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded.  For the above reasons, we conclude that such an offense qualifies as a categorical crime involving

---

[10]  The Immigration Judge observed that section 13-1805(A) of the Arizona Revised Statutes may be applied to the offense of "joyriding," which we have held is not a crime involving moral turpitude.  We disagree.  In Arizona, joyriding is prohibited under a separate statute at section 13-1803(A)(1), which reads:  "A person commits unlawful use of [a] means of transportation if, *without intent permanently to deprive*, the person . . . [k]nowingly takes unauthorized control over another person's means of transportation." (Emphasis added.)  A joyriding offense, by definition, is one in which the offender intends and has the means to return the vehicle to the rightful owner, unconditionally and promptly.  Such conduct cannot be prosecuted as shoplifting.

[11]  To some extent, *Matter of Grazley* and *Matter of Jurado* have embodied an effort to finesse this distinction by indulging a commonsense "assumption" that in cases involving a theft of cash or merchandise from a retail establishment, the offender's intent was to permanently deprive the owner of the cash or merchandise.  We continue to believe that *Grazley* and *Jurado* reached proper conclusions as to the turpitudinous nature of the conduct defined by the statutes at issue in those cases.  However, in light of the increasing strictures of the categorical approach in cases such as *Mathis v. United States*, 136 S. Ct. 2243 (2016), we recognize that the validity of the *Grazley* and *Jurado* "assumption" may be called into serious doubt unless the moral turpitude standard for theft offenses is updated to more accurately distill the state of the criminal law in this area.

moral turpitude.[12]  Therefore, to the extent that any of our prior decisions have required a literal intent to permanently deprive in order for a theft offense to be a crime involving moral turpitude, those decisions are overruled.

## III.  CONCLUSION

We conclude that the Immigration Judge erroneously terminated the respondent's removal proceedings.[13]  Accordingly, the DHS's appeal will be sustained, the Immigration Judge's decision will be vacated, the removal proceedings will be reinstated, and the record will be remanded.

**ORDER:**  The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[12]  The respondent cites *Sulavka v. State*, 221 P.3d 1022, 1026 (Ariz. Ct. App. 2009), for the proposition that one can be convicted of shoplifting in Arizona merely by removing an item from a shelf and concealing it.  However, we do not consider such a "theft by concealment" to be less reprehensible than other types of theft.  One who exercises control over another's property and conceals it with the intention of depriving the owner of its value has committed an inherently reprehensible act even if he does not intend to keep the concealed property for himself.  *See* 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.5 (2d ed. Westlaw 2016) (noting that larceny is defined "in terms of the owner's deprivation rather than of the thief's gain, in recognition of the majority view that, for larceny, there need be no intent on the part of the thief to gain a benefit for himself"); *see also Jupiter v. State*, 616 A.2d 412, 415 (Md. 1992); *People v. Bradovich*, 9 N.W.2d 560, 561 (Mich. 1943); *McIntosh v. State*, 180 N.W. 573, 575 (Neb. 1920).

[13]  Because section 13-1805(A) defines a categorical crime involving moral turpitude, we find it unnecessary to review the portion of the Immigration Judge's decision addressing "divisibility" and the applicability of the modified categorical approach.