# Matter of Fernando CORDERO-GARCIA, Respondent

*Decided October 18, 2019*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The crime of dissuading a witness in violation of section 136.1(b)(1) of the California Penal Code is categorically an aggravated felony offense relating to obstruction of justice under section 101(a)(43)(S) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(S) (2012). *Matter of Valenzuela Gallardo*, 27 I&N Dec. 449 (BIA 2018), followed.

(2) The holding in *Matter of Valenzuela Gallardo*, 27 I&N Dec. 449 (BIA 2018), may be applied retroactively.

FOR RESPONDENT: Michael K. Mehr, Esquire, Santa Cruz, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jennifer L. Castro, Assistant Chief Counsel

BEFORE: Board Panel: WENDTLAND, GREER, and O'CONNOR, Board Members.

WENDTLAND, Board Member:

In a decision dated June 27, 2012, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien convicted of an aggravated felony, denied his application for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2012), and ordered him removed from the United States.[1] We dismissed the respondent's appeal on November 27, 2012, affirming the Immigration Judge's conclusion that the respondent was convicted of an aggravated felony because dissuading a

---

[1] The Immigration Judge also found that the respondent was removable under section 237(a)(2)(A)(ii) of the Act, as an alien convicted of more than one crime involving moral turpitude. In light of our conclusion that the respondent is removable under section 237(a)(2)(A)(iii) based on our retroactive application of *Matter of Valenzuela Gallardo*, 27 I&N Dec. 449 (BIA 2018), we need not address the other charge of removability. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). However, for purposes of our retroactivity analysis, we will assume that the respondent is *not* deportable under section 237(a)(2)(A)(ii) of the Act and that his removability turns solely on whether he is convicted of an aggravated felony.

witness in violation of section 136.1(b)(1) of the California Penal Code is an offense relating to obstruction of justice under section 101(a)(43)(S) of the Act, 8 U.S.C. § 1101(a)(43)(S) (2012).[2] In addition, we agreed with the Immigration Judge that the respondent did not meet his burden of showing that he merits a grant of cancellation of removal in the exercise of discretion. We subsequently denied a motion filed by the Department of Homeland Security ("DHS") to reopen these removal proceedings.

Pursuant to a motion by the Government, the United States Court of Appeals for the Ninth Circuit has remanded this case for us to address whether the crime of dissuading a witness in violation of section 136.1(b)(1) of the California Penal Code is an aggravated felony offense relating to obstruction of justice in light of its decision in *Valenzuela Gallardo v. Lynch*, 818 F.3d 808 (9th Cir. 2016). This question will determine the respondent's removability under section 237(a)(2)(A)(iii) of the Act and his eligibility for cancellation of removal under section 240A(a)(3). The respondent's appeal will again be dismissed.

## I. AGGRAVATED FELONY

Section 101(a)(43)(S) of the Act defines an aggravated felony as "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." To establish whether the respondent's conviction is for such an offense, we apply the categorical approach by focusing on whether the elements of section 136.1(b)(1) of the California Penal Code proscribe conduct that categorically falls within the Federal generic definition of an offense relating to obstruction of justice. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

We outlined the generic definition of an offense relating to obstruction of justice in *Matter of Valenzuela Gallardo* ("*Valenzuela Gallardo I*"), 25 I&N

---

[2] At all relevant times, section 136.1(b)(1) of the California Penal Code has provided in pertinent part:

> Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:
>> (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

Dec. 838 (BIA 2012). The Ninth Circuit declined to defer to our definition, concluding that it was impermissibly vague. *Valenzuela Gallardo*, 818 F.3d at 812–13, 823–24. While this appeal was pending, we clarified the generic definition of an aggravated felony under section 101(a)(43)(S) of the Act, stating that an offense relating to obstruction of justice

> consists of offenses covered by chapter 73 of the Federal criminal code[, 18 U.S.C. §§ 1501–1521 (2012),] or any other Federal or State offense that involves (1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable by the defendant, or in another's punishment resulting from a completed proceeding.

*Matter of Valenzuela Gallardo* ("*Valenzuela Gallardo II*"), 27 I&N Dec. 449, 460 (BIA 2018).

We further held that the crime of accessory to a felony under section 32 of the California Penal Code is an aggravated felony offense relating to obstruction of justice. *Id.* at 461. The California accessory statute required "a violator to aid the principal, with knowledge that the principal has committed a crime, and with the specific intent to interfere in the principal's arrest, trial, conviction, or punishment." *Id.* (citing *People v. Nuckles*, 298 P.3d 867, 870 (Cal. 2013)).

To obtain a conviction under section 136.1(b)(1) of the California Penal Code, the State must prove that "(1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making [a] report . . . to any peace officer or other designated officials." *People v. Navarro*, 152 Cal. Rptr. 3d 109, 117–18 (Cal. Ct. App. 2013) (alteration in original) (quoting *People v. Upsher*, 66 Cal. Rptr. 3d 481, 488 (Cal. Ct. App. 2007)). "The prosecution must also establish that 'the defendant's acts or statements [were] intended to affect or influence a potential witness's or victim's testimony or acts.'" *Id.* at 118 (alteration in original) (quoting *People v. McDaniel*, 27 Cal. Rptr. 2d 306, 309 (Cal. Ct. App. 1994)).

According to this California case law, section 136.1(b)(1) requires a specific intent to interfere in an investigation or proceeding. Where an individual attempts to prevent or dissuade a victim or witness from making a report of a crime to a peace officer or other designated official, an investigation or proceeding would necessarily be either ongoing, pending, or reasonably foreseeable. In other words, there would be little reason for a person to try to prevent or dissuade a victim or witness from reporting the crime to appropriate authorities unless there was an investigation in progress or one was reasonably foreseeable. We therefore conclude that dissuading a witness in violation of section 136.1(b)(1) of the California Penal Code is categorically an aggravated felony offense relating to obstruction of justice

under section 101(a)(43)(S) of the Act pursuant to the criteria that we outlined in *Matter of Valenzuela Gallardo II*, 27 I&N Dec. at 460.[3]

## II. RETROACTIVITY

The respondent argues that the standard for obstruction of justice we set forth in *Valenzuela Gallardo II* may not be applied retroactively to his conviction, which occurred before our decisions in *Valenzuela Gallardo I* and *II* were issued. Therefore, we must also determine whether the standard for obstruction of justice we set forth in *Matter of Valenzuela Gallardo II* can be retroactively applied to the respondent's conviction. In this regard, we recognize the well-established principle that agencies may adjudicate new rules and apply them retroactively.

> [T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.
>
>     . . . That [an agency] action might have a retroactive effect [i]s not necessarily fatal to its validity. Every case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency. But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law.

*SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) (citation omitted).

We acknowledge, however, that "[a]s a general rule, '[r]etroactivity is not favored in the law.'" *Velasquez-Garcia v. Holder*, 760 F.3d 571, 579 (7th Cir. 2014) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). In this regard, at least one circuit has indicated that agency "rules . . . should be presumed prospective in operation *unless Congress has clearly authorized retroactive application.*" *De Niz Robles v. Lynch*, 803 F.3d 1165, 1172 (10th Cir. 2015) (emphasis added); *see also Betansos v. Barr*, 928 F.3d 1133, 1143–46 (9th Cir. 2019) (noting that a retroactivity analysis "should be conducted with 'the presumption of prospectivity'" where the court has given deference to our decision pursuant to *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), but deciding

---

[3]  The Immigration Judge found that a violation of section 136.1(b)(1) of the California Penal Code was not a categorical aggravated felony offense relating to obstruction of justice, but he applied the modified categorical approach to determine that the respondent's conviction was for an aggravated felony. In light of our holding that dissuading a witness under California law is categorically an aggravated felony, we will not address the Immigration Judge's finding in this regard.

to apply the decision retroactively (quoting *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1144 (10th Cir. 2016))).

However, Congress has "indicate[d] unambiguously its intention to apply [the aggravated felony provisions] retroactively." *INS v. St. Cyr*, 533 U.S. 289, 318–19 & n.43 (2001) (stating that the aggravated felony definition itself clearly provides that it applies retroactively). In enacting section 101(a)(43) of the Act, Congress expressly stated its intent that "the term [aggravated felony] applies regardless of whether the conviction was entered before, on, or after the date of enactment." Accordingly, in our informed discretion, we conclude that we may apply our decisions retroactively after proper consideration of the relevant factors, consistent with *SEC v. Chenery Corp.*, 332 U.S. at 209 (upholding the agency's determination, despite its retroactive effect, and recognizing it as "the product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies, and responsible treatment of the uncontested facts").

## A. Change in Law

Before we decide whether to apply *Matter of Valenzuela Gallardo II* retroactively, we must consider whether our holding in that case is a change in law, which the Ninth Circuit has stated is required before a retroactivity analysis is necessary. *See Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1276 (9th Cir. 2018). A "retroactivity analysis is only applicable when 'an agency consciously overrules or otherwise alters its own rule or regulation,' or 'expressly considers and openly departs from a circuit court decision.'" *Id.* at 1277 (quoting *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 518–19 (9th Cir. 2012) (en banc)). The Ninth Circuit remanded *Valenzuela Gallardo I* for "consideration of a *new* construction or application of the interpretation" of obstruction of justice that we had outlined in *Matter of Espinoza*, 22 I&N Dec. 889 (BIA 1999), to which the court previously deferred in *Trung Thanh Hoang v. Holder*, 641 F.3d 1157 (9th Cir. 2011). *Valenzuela Gallardo*, 818 F.3d at 812–13 (emphasis added).

Not all Board precedents clarifying prior decisions are necessarily changes in the law. The Ninth Circuit has rejected as "contrary to settled law" the assertion that "the mere existence of a new published decision on an issue would always trigger retroactivity analysis." *Olivas-Motta*, 910 F.3d at 1276. Moreover, a new Board precedent that resolves prior, potentially inconsistent unpublished decisions is not a change in the law, because "[u]npublished decisions are not precedential and 'do not bind future parties.'" *Id.* at 1278 (quoting *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc)).

As we will discuss in greater detail below, our decision in *Valenzuela Gallardo II* openly departed from the generic definition that the Ninth Circuit previously approved. Our decision also clarified *Valenzuela Gallardo I*, but the standard in *Valenzuela Gallardo II* differs in some respects from our prior definition. We therefore conclude that a retroactivity analysis is appropriate in this case.

## B. Test for Retroactivity

Next, we must determine the appropriate test for ascertaining whether *Matter of Valenzuela Gallardo II* may be applied retroactively. The Ninth Circuit applies the factors outlined in *Montgomery Ward & Co. v. FTC* ("*Montgomery Ward*"), 691 F.2d 1322 (9th Cir. 1982). *Garfias-Rodriguez*, 702 F.3d at 514–23 (applying these factors in favor of retroactive applicability). This test was first set forth in *Retail, Wholesale & Dep't Store Union v. NLRB* ("*Retail Union*"), 466 F.2d 380, 390 (D.C. Cir. 1972) (involving a labor dispute before the National Labor Relations Board ("NLRB") between a company and union workers).

The Second, Third, Fourth, Sixth, Seventh, and Tenth Circuits also apply this test. *See Microcomputer Tech. Inst. v. Riley*, 139 F.3d 1044, 1050 n.4 (5th Cir. 1998) (collecting cases); *see also De Niz Robles*, 803 F.3d 1177–80 (following the "balancing" test the Tenth Circuit set forth in *Stewart Capital Corp. v. Andrus*, 701 F.2d 846, 848 (10th Cir. 1983)). The Eighth Circuit applies a similar test. *Ryan Heating Co. v. NLRB*, 942 F2d 1287, 1289 (8th Cir. 1991). By contrast, the Fifth Circuit weighs "the disadvantages of retroactivity—frustration of parties' expectations—against the detrimental effect of prospectivity—partial frustration of what we have now determined is the proper statutory interpretation." *Microcomputer Tech. Inst.*, 139 F.3d at 1051.

In light of the courts' overwhelming adoption of the test outlined in *Retail Union* (known as the *Montgomery Ward* test in the Ninth Circuit), we will employ that test, not only in cases arising in the Ninth Circuit, where we are bound to use it, but throughout the country. *See Matter of J-H-J-*, 26 I&N Dec. 563, 564 (BIA 2015) (acceding to the majority view of the circuits).[4] In addition to considering the desirability of applying the immigration laws with nationwide uniformity, we must also recognize that the circuit courts use this test in reviewing decisions from numerous other agencies. In our opinion, it would therefore be incongruous for us to employ a different test.

---

[4] To the extent that a court of appeals applies a different test, however, Immigration Judges and the Board should follow the law of that circuit. *See Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989).

C.  Application

The test for retroactivity requires us to consider the following factors:

> (1) whether the particular case is one of first impression, (2) whether the new rule
> represents an abrupt departure from well established practice or merely attempts to
> fill a void in an unsettled area of law, (3) the extent to which the party against whom
> the new rule is applied relied on the former rule, (4) the degree of the burden which
> a retroactive order imposes on a party, and (5) the statutory interest in applying a
> new rule despite the reliance of a party on the old standard.

*Montgomery Ward*, 691 F.2d at 1333 (quoting *Retail Union*, 466 F.2d at 390).

The Ninth Circuit has recognized that the first factor may not be well suited to the context of proceedings to remove an alien because *Retail Union* involved litigation between private parties in labor disputes before the NLRB.  *See Garfias-Rodriguez*, 702 F.3d at 520–21 (noting that the first factor often does not favor either side in removal proceedings, where the Government is always a party); *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 951 (9th Cir. 2007) ("[T]he first factor is directed towards maintaining an incentive for litigants to raise novel claims by allowing a litigant who successfully argues for a new rule to get the benefit of that rule.").  However, the court has recognized that this factor favors the alien where the agency has "confronted the problem before, *ha[s] established an explicit standard of conduct*, and now attempts to punish conformity to that standard under a new standard subsequently adopted."  *Miguel-Miguel*, 500 F.3d at 951 (alteration in original) (emphasis added) (quoting *Retail Union*, 466 F.2d at 391).

Those circumstances were not present in *Valenzuela Gallardo II*, which was issued after decades of rulings by the Board and the Ninth Circuit interpreting the aggravated felony ground of removal relating to obstruction of justice.  Moreover, the Ninth Circuit has noted in regard to the first factor that "any question of unfairness in applying a new rule . . . , such as surprise or detrimental reliance, is fully captured in the second and third *Montgomery Ward* factors."  *Garfias-Rodriguez*, 702 F.3d at 521.  Based on the circumstances of this case, we agree.

As the Ninth Circuit has stated regarding the question of unsettled law,

> The second and the third factors are closely intertwined.  If a new rule "represents
> an abrupt departure from well established practice," a party's reliance on the prior
> rule is likely to be reasonable, whereas if the rule "merely attempts to fill a void in
> an unsettled area of law," reliance is less likely to be reasonable. . . . [T]hese two
> factors will favor retroactivity if a party could reasonably have anticipated the change
> in the law such that the new "requirement would not be a complete surprise."

*Id.* (citations omitted).

The Ninth Circuit has acknowledged that Congress did not clearly define the generic elements of an aggravated felony offense relating to obstruction of justice. *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086 (9th Cir. 2008). Since 1997, both the Ninth Circuit and the Board have issued decisions defining the outer limits of offenses relating to obstruction of justice. *See*, *e.g.*, *Valenzuela Gallardo*, 818 F.3d 808; *Trung Thanh Hoang*, 641 F.3d 1157; *Matter of Espinoza*, 22 I&N Dec. 889; *Matter of Batista-Hernandez*, 21 I&N Dec. 955 (BIA 1997). Recently, the Ninth Circuit emphasized that "an ongoing conversation or a back-and-forth between this Court and the [Board] about the proper interpretation" is an important consideration in a retroactivity analysis. *Betansos*, 928 F.3d at 1144. A brief review of these decisions reflects that the discussion between the Board and the Ninth Circuit regarding this aggravated felony ground has been ongoing, and the process of defining it has been unsettled, for several decades.

In *Matter of Batista-Hernandez*, 21 I&N Dec. at 961, we concluded that the offense of accessory after the fact in violation of 18 U.S.C. § 3 (Supp. V 1993) "clearly relates to obstruction of justice," notwithstanding the fact that the statute lacked an element of an ongoing investigation or proceeding. Two years later, in *Matter of Espinoza*, we held that misprision of felony in violation of 18 U.S.C. § 4 (1994) was not an offense relating to obstruction of justice. The Ninth Circuit has repeatedly deferred to a generic definition that it drew from *Matter of Espinoza*, which, according to the court, required interference with an ongoing proceeding or investigation, although the decision did not itself articulate such a requirement and *Batista-Hernandez* clearly did not apply one.[5] *See Trung Thanh Hoang*, 641 F.3d at 1164; *Renteria-Morales*, 551 F.3d at 1086–87; *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 861–63 (9th Cir. 2008).[6] However, one judge in

---

[5]  We did note the absence of an ongoing criminal investigation or trial in *Matter of Espinoza*. However, we made the more general observation that misprision of felony does not constitute "obstruction of justice" because "it lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Matter of Espinoza*, 22 I&N Dec. at 896. In identifying the critical element of specific intent, we did not state that an ongoing criminal investigation or trial was always required, but we subsequently clarified the matter in *Valenzuela Gallardo I*, 25 I&N Dec. at 841–42.

[6]  If we were to assess the generic definition of an aggravated felony offense relating to obstruction of justice when the respondent entered his guilty plea in 2009, we would still conclude that the law was unsettled at that time. The Ninth Circuit precedent had not yet analyzed our 1997 decision in *Matter of Batista-Hernandez*, so a respondent who potentially faced this aggravated felony charge in 2009 would have had to address *Matter of Batista-Hernandez* and could not merely rely on *Renteria-Morales* and *Salazar-Luviano*.

*Trung Thanh Hoang* dissented from the majority's use of that definition, contending that the court was not limited to applying the definition that it had derived from *Matter of Espinoza* and should, instead, have followed *Matter of Bastista-Hernandez*. *Trung Thanh Hoang*, 641 F.3d at 1165–68 (Bybee, J., dissenting).

We subsequently clarified our prior precedents interpreting section 101(a)(43)(S) of the Act and held that an offense relating to obstruction of justice must have as an element "the affirmative and intentional attempt, with specific intent, to interfere with the *process of justice* . . . . [T]he existence of [an ongoing criminal investigation or trial] is not an essential element of 'an offense relating to obstruction of justice.'" *Valenzuela Gallardo I*, 25 I&N Dec. at 841 (emphasis added). Concerned that this definition might be impermissibly vague, a divided panel of the Ninth Circuit applied the doctrine of constitutional avoidance and remanded for us to consider a new construction of section 101(a)(43)(S) of the Act or to apply our previous interpretation in *Matter of Espinoza*. *See Valenzuela Gallardo*, 818 F.3d at 811, 813–24. We clarified our definition again in *Valenzuela Gallardo II*.

The unsettled nature of defining the term "relating to obstruction of justice" in section 101(a)(43)(S) of the Act is evidenced by the continuing discussion in these administrative and judicial decisions for more than 20 years. That the question has been unsettled becomes more apparent in light of the reasoning underpinning the Ninth Circuit's opinion in *Valenzuela Gallardo*, where the court had serious constitutional doubts about the vagueness of the definition we set forth in *Valenzuela Gallardo I*. As the court noted, "Absent some indication of the contours of 'process of justice,' an unpredictable variety of specific intent crimes could fall within it, leaving us unable to determine what crimes make a criminal defendant deportable under [section 101(a)(43)(S)] and what crimes do not." *Valenzuela Gallardo*, 818 F.3d at 820. It would be questionable to conclude that an area of law is settled when a court has expressed such concerns about the vagueness of an agency's interpretation of the relevant statute.

Moreover, a construction that requires interference with an ongoing proceeding or investigation brings its own uncertainty. Some of the obstruction of justice crimes that Congress placed in Chapter 73 of the Federal criminal code do not require interference with an ongoing tribunal or investigation. *See Valenzuela Gallardo*, 818 F.3d at 821 (citing 18 U.S.C. § 1512(b)(3) (2012) ("prohibition on tampering with a witness with the intent to hinder or prevent 'communication to a law enforcement officer' regarding a Federal offense"); § 1512(d)(2) ("prohibition on harassing someone with the intent to prevent that person from 'reporting [a federal crime] to a law enforcement officer or judge'"); and § 1519 (2012) ("prohibition on falsifying or destroying a record 'with the intent to impede, obstruct, or

influence the investigation or proper administration of any matter' within the jurisdiction of the United States")). An Immigration Judge, practicing attorney, or alien could reasonably question whether these offenses—placed by Congress in a chapter expressly dedicated to obstruction of justice— would qualify as an aggravated felony offense relating to obstruction of justice under the definition previously applied by the Ninth Circuit. Although case-by-case adjudication would likely resolve this issue over time, it is further evidence of unsettled law.

We also look beyond the interplay between Board precedent and Ninth Circuit decisions to determine whether the definition of the term "relating to obstruction of justice" is unsettled. The Ninth Circuit's inquiry has been whether and to what extent it would defer to the Board's definition under step two of the analysis in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984) (stating that deference to an agency's decision depends on whether its statutory interpretation is "based on a permissible construction of the statute"). A court can only reach this second step if the statute is "silent or ambiguous." *Id.* at 843. Finding that the Act did not define the phrase "offense relating to obstruction of justice," the Ninth Circuit has thus addressed this statutory term in the context of *Chevron*'s step two.[7] *See Renteria-Morales*, 551 F.3d at 1086.

By contrast, the Third Circuit has concluded that the phrase "relating to obstruction of justice" is unambiguous. *See Denis v. Att'y Gen. of U.S.*, 633 F.3d 201, 209 (3d Cir. 2011). Applying de novo review, the Third Circuit found our definition of the phrase in *Espinoza* to be unnecessarily restrictive, and it adopted a broader definition. *Id.* at 211–13; *see also Matter of Valenzuela Gallardo I*, 25 I&N Dec. at 843. Judicial disagreement over whether a phrase is plain or ambiguous further demonstrates how unsettled the issue of defining "relating to obstruction of justice" has been.

Additionally, we consider significant the contrast between the circuit courts' assessment of our decisions defining an offense relating to obstruction of justice and those addressing the circumstances under which a theft offense is a crime involving moral turpitude. In *Matter of Diaz-Lizarraga*, 26 I&N Dec. 847 (BIA 2016), we revisited the standard by which we assessed whether a theft offense is turpitudinous. Previously, from our "earliest days," we had held that "a theft categorically involves moral turpitude if—and only if—it is committed with the intent to *permanently* deprive an owner of property." *Id.* at 849. Finding it appropriate to "update our existing jurisprudence," we determined that "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his

---

[7]  In *Valenzuela Gallardo*, 818 F.3d at 815–18, the Ninth Circuit applied the constitutional avoidance doctrine at *Chevron*'s step one. However, the court also noted that section 101(a)(43)(S) was an "ambiguous statute." *Id.* at 824.

property either permanently or under circumstances where the owner's property rights are substantially eroded." *Id.* at 853. Recently, the Fifth Circuit joined the Second, Ninth, and Tenth Circuits in declining to apply our decision retroactively, concluding that our new definition "drastically chang[ed] the landscape." *Monteon-Camargo v. Barr*, 918 F.3d 423, 431 (5th Cir. 2019); *see also Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1296 (9th Cir. 2018); *Obeya v. Sessions*, 884 F.3d 442, 449 (2d Cir. 2018); *Lucio-Rayos v. Sessions*, 875 F.3d 573, 578 (10th Cir. 2017). We discern no comparable "departure from well established practice" in the context of interpreting the ambiguous phrase "relating to obstruction of justice" in section 101(a)(43)(S) of the Act. *Montgomery Ward*, 691 F.2d at 1333 (citation omitted).

The Immigration Courts and the Board routinely encounter a diverse range of criminal statutes containing distinct elements that might relate to obstruction of justice. We must therefore determine whether these State and Federal offenses categorically relate to obstruction of justice. Our prior determinations, such as our holding in *Matter of Espinoza* that misprision of felony under 18 U.S.C. § 4 does not relate to obstruction of justice, are relevant but not dispositive when examining these other statutes. It was in this context that we made our conclusions in *Valenzuela Gallardo I* and *II* that accessory to a felony in violation of section 32 of the California Penal Code is categorically an obstruction of justice offense under section 10l(a)(43)(S) of the Act.

Applying the second factor of the *Montgomery Ward* test, we conclude that these decisions were merely attempts to fill a void in an unsettled area of law and do not represent an abrupt departure from well-established practice. *See, e.g.*, *Valenzuela Gallardo I*, 25 I&N Dec. at 842 (noting that our prior precedent had not gone "so far as to hold that obstruction offenses must involve interference with an *ongoing* investigation or proceeding"); *Matter of Batista-Hernandez*, 21 I&N Dec. 955 (holding that "accessory after the fact" under 18 U.S.C. § 3 qualifies as an offense relating to obstruction of justice, without requiring a pending or ongoing proceeding). Likewise, we cannot discern a settled "former rule" on which the respondent may reasonably have relied under the third factor of the *Montgomery Ward* test.

We will assume that *Montgomery Ward*'s fourth factor "strongly favors" the respondent. *Garfias-Rodriguez*, 702 F.3d at 523. Removal of an alien from the United States is a "substantial burden that weighs against retroactive application of an agency adjudication." *Id.* (citation omitted). We do not diminish this factor or the hardship that might result from an alien's removal.

"The fifth factor—the statutory interest in applying a new rule—points in favor of the government because non-retroactivity impairs the uniformity of a statutory scheme, and the importance of uniformity in immigration law is

well established." *Id.* "[T]he Federal immigration laws are intended to have uniform nationwide application and to implement a unitary Federal policy." *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 508 (BIA 2008) (citing *Kahn v. INS*, 36 F.3d 1412, 1414 (9th Cir. 1994)). As noted, Congress expressly indicated its intention that the aggravated felony definitions in section 101(a)(43) of the Act should apply retroactively. *See St. Cyr*, 533 U.S. at 318–19. This congressional action further cuts in favor of retroactive application here, although it is not dispositive.

Having weighed the factors in the *Montgomery Ward* test in their totality, we conclude that *Valenzuela Gallardo II* may be applied retroactively. Our decision has filled a void in what was an unsettled area of law, and while we acknowledge the hardship that retroactive application might cause to the respondent, the national uniformity of our immigration laws is a strong countervailing interest. We reach this conclusion based on the circumstances of this case and the provision of the Act at issue. We do not decide whether or how to apply decisions retroactively in other contexts, including those involving other grounds for removal and discretionary or mandatory relief.

## III. CONCLUSION

In sum, the respondent was convicted of dissuading a witness in violation of section 136.1(b)(1) of the California Penal Code, an offense that is categorically an aggravated felony offense relating to the obstruction of justice. We reject his argument that the standard we set forth for defining obstruction of justice in *Valenzuela Gallardo II* may not be applied retroactively to his conviction, and we conclude that he is removable under section 237(a)(2)(A)(iii) of the Act. Consequently, he is also ineligible for cancellation of removal under section 240A(a)(3) of the Act.[8] Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[8] The respondent summarily argues that both we and the Immigration Judge erred by denying his application for cancellation of removal. This claim, which addresses no new arguments on remand, does not merit any further consideration.